IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **PUERTO RICO HORSE OWNERS ASSOCIATION, INC.**<br><br>*Plaintiff*,<br><br>v.<br><br>**PUERTO RICO GAMING COMMISION, et al.**<br><br>*Defendants*. | CIVIL NO. 24-1194 (MAJ) |

**MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)**

**TO THE HONORABLE COURT:**

**NOW COME** defendants **PUERTO RICO GAMING COMMISION** and its members in their official capacities ("Commission" or "Appearing Defendants"), through the undersigned counsel, who move to dismiss the Second Amended Complaint filed by Plaintiff, Puerto Rico Horse Owners Association, Inc. ("PRHOA" or "Plaintiff"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. In support of this motion, the Commission states as follows:

**I.     PRELIMINARY STATEMENT**

PRHOA has brought claims against the Commission, alleging violations to Article I, Section 8, Clause 3 of the United States Constitution; to the Fifth and Fourteenth Amendment of the US Constitution; and their Constitutional Due Process Rights pursuant to 42 USC §1983. Plaintiff also claims it is entitled to compensatory and punitive damages, as well as attorneys' fees.

In essence, Plaintiff alleges that the Commission failed to maintain the thoroughbred racetrack at Hipódromo Camarero, resulting in unsafe conditions for riders and thoroughbreds

1

causing damages to Plaintiff. However, PRHOA's claims against the Commission fail to establish a legal basis for liability because the Commission, as a regulatory body, does not execute the maintenance of the racetrack. Moreover, the facts do not establish a state action, nor do they amount to a constitutional violation. Also, the Commission is protected under the immunity provided by the Eleventh Amendment of the US Constitution. Finally, this Court should abstain from providing the remedy requested as to the production of information from the Commission, as such requests are regulated by local law and establishes the State Courts as the forum to make such requests.

## II. STATEMENT OF THE CASE

Plaintiff filed the original Complaint if this case on April 26, 2024. See, Docket No. ("Dkt." 1). After several amendments, on April 30, 2024, PRHOA filed its Second Amendment Complaint. See, Dkt. No. 9. The Commission was served with process on May 1st, 2024. See, Dkt. 10. On May 17, 2024, the Commission appeared requesting extension of time until June 5, 2024 to answer the Complaint of otherwise plead. Id. The Commission's request was granted on May 20, 2024. See, Dkt. 11.

In the Second Amended Complaint, Plaintiff alleged that the PRHOA is a non-profit corporation composed of 150 members holding licenses as owners of thoroughbred racehorses in Puerto Rico issued by the Commission. See, Dkt. 9, ¶10 and ¶11. That license enables the members of the PRHOA to race their horses at the racetrack at Hipódromo Camarero ("Racetrack"), which is owned and operated by Codefendant, Camarero Racetrack, Corp. ("Camarero"). See, Dkt. 9, ¶11.

It is also alleged that the Commission is a governmental agency created by Act No. 81-2019, as amended, 15 L.P.R.A. § 981 et. seq., known as the Law of the Gaming Commission of

the Government of Puerto Rico ("Act 81"). See, Dkt. 9, ¶12. According to the Second Amended Complaint, Act 81 grants jurisdiction to the Commission to "regulate all aspects of the thoroughbred racing industry and sport in Puerto Rico, as set forth in Law 83 of July 2, 1987, as amended, known as the Law of the Industry and the Racing Sport in Puerto Rico ("Racing Act")". Id. Plaintiffs further posit that pursuant to the Racing Act, the Commission is empowered to "issue all orders, rules and regulations conductive to preserving the physical security, economic and social well-being of the natural and legal persons related with the [Administration of the Industry and the Racing Sport in Puerto Rico]." See, Dkt. 9, ¶14.

In the Second Amended Complaint Plaintiff clearly delineates the scope of the Commission's and Camarero's responsibilities. To this effect, Plaintiffs alleged that "[a]mong the duties and responsibilities of the Commission and its Executive Director is the supervision of the [Racetrack] and its operation by Camarero." See, Dkt. 9, ¶15.

Plaintiff also alleges that it filed complaints before the Commission regarding the conditions of the Racetrack. See, Dkt. 9, ¶16 and ¶18. PRHOA alleged that the Commission failed to act upon the two (2) complaints. See, Dkt. 9, ¶16 to ¶20.

Plaintiff argued that the Commission's alleged failure to act on their complaints and petitions for information regarding the poor condition of the Racetrack, constitutes a violation of Article 1, Section 8, Clause 3 of the U.S. Constitution, as well as to Plaintiff's constitutional rights under the Fifth and Fourteen Amendment. See, Dkt. 9, ¶40 to ¶49. Plaintiff also sustains that the supposed inaction of the Commission has deprived Plaintiff and their members of their property without due process of law. Simultaneously, Plaintiff contends that this constitutes a violation of their constitutional due process rights under 48 U.S.C. § 1983. See, Dkt. 9, ¶50 to ¶54.

As to the remedies, Plaintiff requested from this Court and Order instructing Camarero and the Commission to "grant immediately grant access to [its expert] Mr. Passero to the Racetrack for his examination and that of the equipment used for its maintenance, and be able to submit a report with his recommendations on the condition of the Racetrack, and for Camarero and the Commission to provide Mr. Passero with the information requested by him".[1] See, Dkt. 9, prayer for relief, Items (a) to (c). Plaintiff also requested a monetary compensation for compensatory and punitive damages, as well as attorney's fees.

The Commission posits that – taking as true all the allegations, as is the standard of review at this stage – the Second Amended Complaint still fails to state a claim against the Commission for which relief can be granted. Thus, all claims against the Commission must be dismissed with prejudice.

### III.   STANDARD OF REVIEW

Fed. R. Civ. P. ("Rule") 12(b)(6) requires a Court to dismiss a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Plausibility is the touchstone by which the sufficiency of a complaint is gauged." Morales-Cruz v. Univ. of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012) (citing, Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009)). To determine whether a complaint states a plausible claim, a court must first "separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Grajales v. Puerto Rico Ports Auth., 682 F.3d 40, 45 (1st Cir. 2012) (citing, Morales-Cruz, 676 F.3d at 224). Then, the court "determine[s] whether the

---

[1] The solicited documentation was the following: (i) Depth of cushion (ii) Depth of base (iii) What is below the base? (iv) Are cushion and base similar? (v) How many gallons in trucks? (vi) Measurement from top of rail to top of cushion every 1/16 of a mile. (vii) Is truck emptied in one round? (viii) How many loads of water are on the running lanes on race days?

factual content permits the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citations and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citations omitted).  Dismissal of a complaint is appropriate, "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture [.]" SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (*en banc*).

## IV.     ARGUMENTS

*A.     Legal standard*

*i.     The Fifth vs. the Fourteenth Amendment*

The Due Process Clause of the Fifth Amendment to the US Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." See, U.S. Const. Amend. V. The Fifth Amendment Due Process Clause, however, applies "only to actions of the federal government--not to those of state or local governments." See, Martinez-Rivera v. Ramos, 498 F.3d 3, 8-9 (1st Cir. 2007); Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001); see also Morin v. Caire, 77 F.3d 116, 120 (5th Cir. 1996)("[T]he Fifth Amendment applies only to the actions of the federal government, and not to the actions of a municipal government as in the present case."); cf. Dusenbery v. United States, 534 U.S. 161, 167, 122 S. Ct. 694, 151 L. Ed. 2d 597 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'").

## ii. The Civil Rights Act

42 USC § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To succeed in a §1983 claim, a plaintiff must prove that a defendant, acting under the authority of state law, deprived him or her of a specific constitutional or federal statutory right. Thus, a plaintiff first must show official conduct, that is, an act or omission undertaken under color of state law. Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 253 (1st Cir. 1996). Then, the plaintiff must also show that the defendants' acts or omissions caused a constitutional injury. See, Rogan v. City of Bos., 267 F.3d 24, 27 (1st Cir. 2001). To satisfy the "constitutional injury" requirement, the plaintiff must make a showing of a deprivation of a federally-secured right. Baker v. McCollan, 443 U.S. 137, 142, 61 L. Ed. 2d 433, 99 S. Ct. 2689 (1979); Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001).

"A state's "mere acquiescence" does not convert private action into state action." Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 164 (1978). Nor can private action be converted into state action "by the simple device of characterizing the State's inaction as 'authorization' and 'encouragement.' Id. at 164-65. "[S]uch a holding would utterly emasculate the distinction between private (and) state conduct ...." Id. It is also well settled that, In the context of private business practices carried out on private business premises, state inaction is not enough." Id.

Generally, for state action to be present under the Fourteenth amendment or federal action under the Fifth Amendment there must exist a sufficiently close nexus between the state or federal government and the challenged action of the private entity so that the action of the latter may be fairly treated as that of the state or federal government itself. Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. 288 (2001). The reason of the close nexus requirement, to find state action under the Fourteenth Amendment, is to assure that constitutional standards are invoked only when it can be said that a state is responsible for specific conduct of which complaint is made. See, Warren v. Government Nat. Mortg. Ass'n, 611 F.2d 1229 (8th Cir. 1980); Whitney v. Window to the World Communications, Inc., 837 F. Supp. 2d 854 (N.D. Ill. 2011); In re Kjeldahl, 52 B.R. 916 (D. Minn. 1985); Fischer v. Driscoll, 546 F. Supp. 861, 6 Ed. Law Rep. 545 (E.D. Pa. 1982).

Moreover, nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. Deshaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 195-96 (1989). It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Id.

Consistent with these principles, case law have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual. Id at 196. If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause

for injuries that could have been averted had it chosen to provide them. As a general matter, a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause. Id at 196-197.

### iii.   *Act 81*

Act 81 was enacted to regulate the business of sports betting in Puerto Rico. See, Act 81's Statement of Motives. It also created the Commission consolidating within it the issues and regulation related to the Equestrian Sports industry; the issues that under the Gaming Law were taken care of by the Tourism Office of the Department of Economic Development and Commerce; the new betting segments in games of chance, sports, electronic gaming leagues, such as (eSports), and the regulation of Fantasy Contests. Id.

Specifically, Act 81, created the Commission as an agency of the Government of Puerto Rico. See, Art. 2.1 of Act 81. The Commission is composed of seven (7) commissioners, of which five (5) will be *ex officio* members: the Secretary of the Department of Economic Development and Commerce; the Executive Director of the Tourism Office of the Department of Economic Development and Commerce; the Secretary of the Department of Recreation and Sports; the Administrator of the Mental Health and Addiction Services Administration; the Chief Information Executive of the Government; and two (2) will be persons from the private sector appointed by the Governor, with the advice and consent of the Senate, who will be of recognized personal, moral and professional integrity and who have no business, activities or interests in the betting industry in Puerto Rich. Id.

Art. 2.2 of Act 81, in pertinent parts, states the duties and faculties of the Commission as follows:

> The Commission shall have all powers as are necessary or convenient to achieve the purposes and enforce the provisions of this Act including, but not limited to, the following:

(1) To adopt, authorize, or amend regulations concerning all matters under its jurisdiction, and prescribe regulations that shall govern the requirements for and the granting of licenses, the imposition of fees, the collection of taxes and duties, and the operation of the games authorized under this Act, pursuant to Act No. 38-2017, as amended, known as the "Government of Puerto Rico Uniform Administrative Procedure Act."

[…]

(5) To sue and be sued.

[…]

(10) To hold hearings in accordance with its adjudicative function, conduct on-site inspections, summon witnesses, administer oaths and take testimonies, subpoena witnesses and documents and any other additional evidence of any nature deemed fundamental to have full knowledge of a matter under its jurisdiction.

(11) To adjudicate on matters under its jurisdiction when required by Act No. 38-2017, as amended, known as the "Government of Puerto Rico Uniform Administrative Procedure Act," and/or the due process of law.

(12) The Commission is also empowered to issue orders or subpoenas and depose witnesses in the course of any investigation, issue subpoenas and compel the attendance of witnesses, administer oaths and take testimonies under oath. In the event of nonappearance, the Commission may resort to and petition the Court of First Instance to compel the attendance of witnesses under penalty of contempt.

(13) To keep and maintain a record of all of its proceedings in regular and special meetings as well as of all license applications and the actions thereon.

(14) To inspect license holders.

(15) To conduct inspections and examine all facilities or locations where activities regulated by this Act are carried out, where gaming devices, equipment and software are manufactured, repaired, sold, or distributed; provided that, these are located in the jurisdiction of Puerto Rico.

[…]

(18) To require access to, and inspect, examine, photocopy, and audit all documents, books, and records of any applicant, license holder, or affiliate thereof, or former license holder, in his facilities or in any other location, whichever is more feasible.

(19) To issue, deny, revoke, suspend, and restrict licenses, and impose civil fines in accordance with the provisions of this Act and the regulations adopted thereunder.

(20) To investigate any suspected violations of the provisions of this Act for the purpose of enforcing any criminal, civil, or administrative liability.

(21) To file any legal action, suit or proceeding deemed necessary or convenient to enforce the provisions of this Act, or of any other law or regulations whose enforcement or oversight has been entrusted to the Commission, whether by and through its attorneys or the Secretary of Justice, upon motion to such effect.

[…]

(24) To exercise the powers delegated thereto by Act No. 83 of July 2, 1987, as amended, known as the "Puerto Rico Horse Racing Industry and Sport Act"; and any other power or authority vested in the Commission by other special laws. The special powers granted by this Act to each sector shall not be construed as a limitation to the broad powers of the Commission to enforce Act No. 83, supra.

Also, Section 4 of the Racing Act, in pertinent parts, vests upon the Commission the following powers:

(a) The Commission is hereby empowered to regulate all matters concerning the Horse Racing Industry and Sport. The Commission, after holding a public hearing, shall adopt such Horse Racing Sport regulations it deems necessary, which, once approved by the Commission and filed with the Department of State pursuant to the provisions of Act No. 38-2017, the 'Government of Puerto Rico Uniform Administrative Procedure Act,' shall have force of law and the violation thereof shall constitute an offense as provided in this Act

(b) Among other things, Commission shall have the authority to:
  (1) Establish by regulations the necessary and essential requirements which, in its judgment, every racetrack should meet to operate as such; establish the terms and conditions to meet said requirements; issue temporary licenses for the period granted to racetrack owners to meet the Board's requirements; cancel any licenses issued temporarily to their holders or their representatives if they fail to comply with the terms thereof; ensure public safety as well as the reliability, honesty, and integrity of the horse racing sport. Provided, that when financial information is required to grant permits or licenses to operate a racetrack, the financial information received by the Board shall be deemed to be confidential and may not be disclosed, except as provided by the Board and the applicable laws. […]
  (5) Prescribe through regulations the requirements to be met by natural and juridical persons engaged in any horse racing activity; provided, that in the interest of the public safety and the order, purity, and integrity of the Horse Racing Sport, a program to detect the presence or use of controlled substances shall be implemented, under which reliable tests shall be randomly administered to Commission officials and employees as well as to all personnel holding a license or permit issued by said Commission to perform duties directly related to the horse racing activity. The preventive nature of this program is aimed at addressing, reducing, and solving the use and abuse of illegal drugs as well as at counseling, treating, and rehabilitating the persons concerned. Said program shall be coordinated with the competent entity or entities of the public and private sectors that have the necessary and reliable resources to

10

administer said tests. The funds to defray the cost of said tests shall proceed from the monies allocated to the Commission for these purposes under this Section. The Commission shall prescribe by regulations the process to be followed to render the operations of this program feasible and efficient. Nothing shall preclude horse owners, stud farm owners, or breeders from being shareholders of racetrack Operators in Puerto Rico.

[…]

(8) Prescribe, through regulations, the fines, civil penalties, and suspensions as well as the civil fines to be imposed for violations of this Act or of the rules, regulations, and orders approved or prescribed by the Commission or by the Stewards, which may be imposed by the Commission, the Stewards, or any other authorized official.

(9) Issue orders, rules, and resolutions and take the necessary measures leading to the physical safety, and the financial and social security of natural or juridical persons related to the horse racing industry and sport, including issuing cease and desist orders, should the Commission believe that a person is violating this Act or the rules, regulations, orders, or licensing requirements promulgated thereunder. When the Commission issues a cease and desist order, it shall notify the affected party of its right to an administrative hearing pursuant to the provisions of Act No. 38-2017, the 'Government of Puerto Rico Uniform Administrative Procedure Act.'

If the party affected by the order fails to request a hearing and the Commission does not order it, said cease and desist order shall continue in effect until it is modified or rendered ineffective by the Commission. If a hearing is requested or ordered, the Commission may modify, render ineffective, or extend said order, upon notice to such effect and affording every interested party the opportunity to be heard, until the final disposition of the matter.

The Commission may render ineffective or modify an order if it determines that the conditions leading to the issuance of said order have changed or that, otherwise, it is in the public interest. It may also resort to the Court of First Instance to request enforcement of any cease and desist order issued by the Commission without the need to post a bond.

The Commission may file any other legal action or institute proceedings as are necessary or convenient to attain the purposes of this Act or of any other Act or Regulations, whose enforcement or oversight has been entrusted thereto.

(11) Hold hearings, conduct on-site inspections, summon witnesses, administer oaths and take testimonies, and subpoena witnesses, require the production of documents, and any other additional evidence of any nature deemed essential for learning the totality of

11

>> the circumstances of a matter before its consideration. The Commission is also empowered to issue orders or summons and take depositions from persons in any investigation. In the event of nonappearance, the Commission shall resort to the Court of First Instance to compel appearance under penalty of contempt.
>> If there are reasonable grounds and/or belief that a person, within or without Puerto Rico, has violated or is violating any of the provisions of this Act or any order or regulation promulgated thereunder, the Commission may conduct investigations as are necessary within and without Puerto Rico.
>> If the Commission determines that any provision of this Act or any order or regulation promulgated thereunder has been or is being violated, the Commission shall refer the matter to the Executive Director who shall act in accordance with the powers vested in him under Section 12 of this Act and under Act No. 38-2017, the 'Government of Puerto Rico Uniform Administrative Procedure Act.'
>
> […]
> (15) Determine and establish by regulations, certain unwelcomed practices in addition to those listed in Section 11 of this Act which constitute an impairment to horse racing activities.

### iv. *The Eleventh Amendment*

Federal courts have limited authority in suits against state governments. States are immune from suits in federal court brought by their own citizens. Hans v. Louisiana, 134 U.S. 1, 20–21 (1890). The Commonwealth of Puerto Rico is treated like a state for these purposes. Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. González-Feliciano, 695 F.3d 83, 102 n.15 (1st Cir. 2012). This immunity is derived from long-existing principles of sovereign immunity, and the Eleventh Amendment is "an exemplification" of the principles. Ex parte New York, 256 U.S. 490, 497 (1921). The "jurisdictional bar applies regardless of the nature of the relief sought." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). A state may consent to suit, but only "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." Edelman v. Jordan, 415 U.S. 651, 673 (1974) (alteration in original) (internal quotation marks omitted).

> *v.  Act No. 141-2019, known as known as the Transparency and Expedited Procedure Law for the Access to public information ("Act 141")*

The Puerto Rico Legislative Assembly approved Law No. 141-2009 with the purpose of establishing a uniform and expeditious procedure to address any request or controversy related to access to public information. Art. 2 of Act 141 establishes that the provisions of this law apply to all branches of the Government of Puerto Rico, that is, the Legislative Branch, Judicial Branch and Executive Branch, including all government entities, public corporations and municipalities. Likewise, it applies to third-party custodians of public information or documents.

In its public policy, said statute declares the duty of the Government of Puerto Rico to facilitate access to public information. See, Art. 3 of Act 141. As such Art. 6 of the aforementioned Law establishes that "[a]ny person may request public information by written request or electronically, without the need to prove any particular or legal interest. […]" Art. 7 of Act 141 establishes the terms that the governmental agency that receives a request for information have to produce the information requested and how the information must be produced. Finally, Art. 9 of Act 141 establishes the procedure to follow before the Court of First Instance when the requested information has been denied by any government entity.

**B.  *There is no plausible Claim for Relief***

> *i.  There is no claim of federal action and, thus, the claims under the Fifth Amendment must be dismissed*

As stated, the Fifth Amendment Due Process Clause "applies only to actions of the federal government, not to those of state or local governments." <u>Martinez-Rivera v. Sanchez Ramos</u>, 498 F.3d 3, 8 (1st Cir. 2007). Because none of the defendants in this case are federal actors, Plaintiff's Fifth Amendment claim under §1983 must be dismissed with prejudice.

### ii. *The facts alleged in the Second Amended Complaint do not show a state action.*

The Commission was created pursuant to Act 81, with jurisdiction and powers over all aspects of the thoroughbred racing industry and sport in Puerto Rico. The Commission's duties include regulating the industry, issuing licenses, and ensuring compliance with the law and regulations. However, the Commission does not engage in the day-to-day operations or maintenance of the racetrack itself. That responsibility lies with Camarero, a separate private entity that operates the racetrack.

PRHOA alleges that the Commission failed to address complaints about the condition of the racetrack, thereby violating the civil rights of its members. Specifically, PRHOA claims that the Commission neglected its duty to ensure the safety of the racetrack, leading to hazardous conditions that resulted in damages. However, the Complaint does not establish that the Commission has any direct responsibility or authority over the physical maintenance of the racetrack. Instead, as Act 81 clearly states, the Commission's role is to oversee compliance with regulatory standards, not to perform maintenance tasks. Therefore, the alleged damage cannot be traced back to the Commission.

There is no doubt that the Commission regulates Camarero's activities and must ensure that Camarero follows the applicable regulations. But that, in itself, is not sufficient nexus between the alleged conduct (not giving proper maintenance to the Racetrack) and the Commission. As stated, Government inaction is not enough to amount to state action. The Government entity must be responsible for specific conduct.

In light of the above, even taken the allegations as true, they fail to establish state action. Thus, all §1983 claims against the Commission must be dismissed entirely.

> iii. *The facts alleged in the Second Amended Complaint do not amount to a Constitutional violation*

PRHOA's claims largely hinge on the assertion that the Commission's failure to address or act on PRHOA's complaints regarding the racetrack conditions constitutes a violation of civil rights. However, a regulatory agency's inaction or failure to respond to complaints does not inherently amount to a civil rights violation under §1983. To state a claim under §1983, PRHOA must show that the Commission, acting under color of state law, deprived it of a right secured by the Constitution or federal law.

The allegations in the Complaint do not demonstrate that the Commission's failure to act on PRHOA's requests rises to the level of a constitutional deprivation. Regulatory oversight typically involves discretion, and the mere failure to meet a plaintiff's demands or to conduct an investigation does not constitute a violation of due process or equal protection rights. As stated, there is no constitutional violation if the State chooses not to act upon a complaint in the manner desired by the complainant.

Thus, Plaintiff's §1983 claims against the Commission must be dismissed with prejudice.

> iv. *The Commission has immunity pursuant to the Eleventh Amendment of the US Constitution*

The Eleventh Amendment to the United States Constitution provides that states and state agencies are generally immune from suits brought by private parties in federal court. Pursuant to Act 81, the Commission was created as a governmental agency of the Commonwealth of Puerto Rico. As such, it enjoys the Commonwealth's sovereign immunity. As stated, this immunity extends to arms of the state, such as the Commission, unless Congress has unequivocally abrogated that immunity or the state has waived it.

In this case, there is no indication that Congress has abrogated the Commission's Eleventh Amendment immunity for the claims asserted by PRHOA, nor has the Commission waived its

immunity. Therefore, the suit against the Commission is barred by the Eleventh Amendment, and the claims against it must be dismissed with prejudice on this ground as well.

### C. *The Court must abstain from ruling on the request for information as there is a process to request information from public entities established by Act 141.*

Plaintiff asserts that by not providing the information it requested, the Commission violated its constitutional rights under the Fourteen Amendment and/or Fifth Amendment. This assertion is mistaken.

Firstly, the Commission and Camarero are not Federal Agencies. therefore, the Freedom of Information Act, which expressly excludes the governments of the territories of the US, does not apply. See, 5 U.S.C. § 552.

Assuming that the documents solicited by Plaintiff are public documents held by Commission; contrary to Puerto Rico, under the US Constitution there is not a constitutional right to access public information. Under state law, in Puerto Rico the right to access public information is recognized as a constitutional right. See, <u>Soto v. Srio de Justicia</u>, 112 DPR 477 (1982). If the Government denies a citizen the right to access public information, he or she could file a mandamus or a claim under the Act 141.

In light of the above, it must be concluded that Plaintiff does not have a claim against the Commission in the federal forum to request the information it want to obtain from the Commission.

**WHEREFORE**, the appearing defendants respectfully request that the Complaint be dismissed in its entirety.

*** REST OF THE PAGE LEFT BLANC INTENTIONALLY ***

Respectfully submitted, on June 4th, 2024, by,

*Attorneys for the Commission*

**DENNIS L. SEILHAMER, ESQ.**

255 Canals Street
San Juan, PR 00907
Tel. (787) 449-5100

*/s/ Dennis Seilhamer*
USDCPR No. 231310
dennis@seilhamerlaw.com


**ALBERTO LÓPEZ-MERLÁN, ESQ.**
255 Canals Street
San Juan, PR 00907
39 Calle Heavenly VW,
Gurabo, PR 00778
Cell. (787) 344-5187

*/s/Alberto López Merlán*
USDCPR No. 308612
alomerlan.law@gmail.com
alberto@seilhamerlaw.com


**P3M LEGAL CONSULTING, LLC.**
PO Box 19586
San Juan, PR 00910

*s/ Sheila Torres Delgado*
**SHEILA TORRES DELGADO**
USDCPR No. 222706
Tel. (787) 530 6470
Email: storres.legal@outlook.com


<u>**CERTIFICATE OF SERVICE**</u>

**IT IS HEREBY CERTIFIED** that on this date, appearing defendants have electronically filed the instant document with the Clerk's Office of this Court by means of the CM/ECF System, which will notify such filing to all attorneys of record in this case.

**P3M LEGAL CONSULTING, LLC.**
PO Box 19586
San Juan, PR 00910

*s/ Sheila Torres Delgado*
**SHEILA TORRES DELGADO**
USDCPR No. 222706
Tel. (787) 530 6470
Email: storres.legal@outlook.com

18