**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| PUERTO RICO HORSE OWNERS ASSOCIATION, INC., <br><br> Plaintiff, <br><br> GAMING COMMISSION OF THE GOVERNMENT OF PUERTO RICO; MANUEL CIDRE MIRANDA, and his spouse JANE DOE I and their conjugal partnership; ANTONIO RAMOS GUARDIOLA, and his spouse JANE DOE II and their conjugal partnership; CARLOS RODRÍGUEZ MATEO, his spouse JANE DOE III and their conjugal partnership; RAY J. QUIÑONEZ, his spouse JANE DOE IV and their conjugal partnership; CARLOS MERCADO SANTIAGO, his spouse JANE DOE V and their conjugal partnership; CRISTOBAL MÉNDEZ BONILLA, his spouse JANE DOE VI and their conjugal partnership; JUAN CARLOS SANTAELLA MARCHÁN, his spouse JANE DOE VII and their conjugal partnership; CAMARERO RACE TRACK CORP., <br><br> Defendants. | Civil No. 24-01194 (MAJ) <br><br> Re: Violations of Civil Rights 42 U.S.C. §§1981, 1983 and 1988 <br><br> Jury Trial Demanded |

<u>**MOTION TO DISMISS AND MEMORANDUM IN SUPPORT PREMISED UPON**</u>
<u>**FEDERAL RULES OF CIVIL PROCEDURE, RULE 12(b)(1) AND RULE (b)(6)**</u>

**TO THE HONORABLE COURT:**

   **COMES NOW**, Camarero Race Track Corp., through the undersigned attorneys, and most respectfully files this Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (b)(6). In support thereof, movant states, avers and preys:

## I.   Introduction

   On April 26, 2024, Plaintiff, Puerto Rico Horse Owners Association, Inc. (PRHOA), brought suit against (1) the Gaming Commission of the Government of Puerto Rico (Gaming

Commission); (2) Manuel Cidre Miranda, the president of the Gaming Commission; (3) Juan Carlos Santaella Marchand, the Interim Executive Director of the Gaming Commission; (4) all other members of the Commission, Antonio Ramos Guardiola, Carlos Rodríguez Mateo, Yay J. Quiñonez, Carlos Mercado Santiago and Cristobal Méndez Bonilla; and (5) the appearing party Camarero Race Track Corp.[1]

The jurisdictional basis of Plaintiff's claims is anchored on federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a) and 1343(a), arising under the Fifth and Fourteenth Amendments to the Constitution of the United States of America; Article I Section 8; Clause 3 of the Constitution of the United States of America, and 42 U.S.C. §1983. Appearing Defendant moves to dismiss the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6) because Plaintiff's only federal claim against Camarero its immaterial to the facts alleged in the Complaint and made solely for the purpose of obtaining jurisdiction, as no federal statutes apply to the facts alleged by Plaintiff against Camarero. Furthermore, dismissal is proper inasmuch Plaintiff has failed to state a claim upon which relief can be granted against any defendant in this case, thus exercising supplemental jurisdiction upon Camarero is wanting and must be declined.

## II.  Plaintiff's allegations

PRHOA claims to have standing to bring suit as representative of its members, owners of thoroughbred racehorses in Puerto Rico[2], whose licenses were issued by the Gaming Commission[3]. Codefendant the Gaming Commission is the government agency in charge of the

---

[1] Plaintiff filed the instant action before this Honorable Court on April 26, 2024(See Complaint, Docket No. 1). On April 30, 2024, Plaintiff filed an Amended Complaint. (Docket No. 9). The spouses of each individual defendant as well as their conjugal partnership were also included as codefendants.

[2] Amended Complaint ¶ 8.

[3] Amended Complaint ¶ 11.

supervision and surveillance (administration) of the Gaming industries, Equestrian Sports, Sports Betting and Electronic Games, as established by Law No. 83 of July 2, 1987 (Act), and its Regulations. It is empowered to regulate all matters concerning the Horse Racing Industry and Sport. It supervises matters related to the gambling industry, both in gambling halls or casinos, as well as in the acceptance of horse bets and other sporting events, among others, under the promulgation of regulations that guarantee the protection of the player; arranging to safeguard and adopting all necessary measures to combat gambling addiction, prevent the participation of minors, eradicate money laundering and tax evasion.

The Gaming Commission establishes by regulations the necessary and essential requirements which, in its judgment, every track should meet to operate, establish the terms and conditions to meet said requirements, issue and cancel licenses to operate; issue orders, rules, and resolutions and take the necessary measures leading to the physical safety, and the financial and social security of natural or juridical persons related to the horse racing industry and sport; hold hearings, conduct on-site inspections, summon witnesses, administer oaths and take testimonies, and subpoena witnesses, require the production of documents, and any other additional evidence of any nature deemed essential for learning the totality of the circumstances of a matter before its consideration. If the Gaming Commission determines that any provision of the Act or any order or regulation promulgated thereunder has been or is being violated, it shall refer the matter to the Executive Director who shall act in accordance with the powers vested in him under Section 12 of the Act and under Act No. 38 of June 30, 2017, the 'Government of Puerto Rico Uniform Administrative Procedure Act.' *P.R. Laws Ann. tit. 15, § 198e.*

The Executive Director of the Commission, who is also a defendant in this case, is the executive officer and administrative director of all horse racing activities in Puerto Rico and has

the authority to enforce compliance with the horse racing laws and regulations and the orders and resolutions of the Commission. He has the authority to impose civil fines for violations of the laws administered by him or the rules, regulations, and orders approved or issued by him, the Commission or the Stewards, as provided in the Horse Racing Regulations. The Executive Director may file any action or suit, or institute proceedings deemed necessary or convenient to exercise his power under the Act or any other law or regulations, whose enforcement or oversight has been entrusted to him, including issuing cease and desist orders. *P.R. Laws Ann. tit. 15, § 198k.*

The appearing codefendant Camarero Race Track is a private for profit domestic corporation that administers and operates Puerto Rico's only horse-racing track, Hipódromo Camarero, located in Canóvanas[4].

On its Complaint, Plaintiff claims that on <u>February 18, 2022</u>, it filed a complaint before the Executive Director of the Gaming Commission, regarding the alleged dire conditions of the racetrack, which was assigned to an administrative judge. It claims the administrative judge dismissed the complaint for lack of jurisdiction because the Executive Director had commenced a parallel investigation on the racetrack, and he understood that the investigation should be completed first. Plaintiff claims that in the meantime the conditions of the racetrack continued to deteriorate, endangering the safety and welfare of the riders and thoroughbreds. *See paragraphs 16-18 of the Amended Complaint.*

Plaintiff claims that on <u>January 12, 2024</u>, it filed a Second Complaint, this time before the Gaming Commission, making reference to the first complaint, claiming that the results of the investigation had not been revealed, with the understanding that the investigation had not been conducted or had not concluded. It claimed that on the second complaint it had asked for the

---

[4] Amended Complaint ¶ 5.

Gaming Commission and/or Camarero to provide all Dr. Michael Leroy Peterson's or his team's reports on the conditions of the racetrack with their recommendations; for Camarero to file a report as to their implementation, bringing to the attention of the Gaming Commission accidents at the racetrack, which have directly impacted jockeys, thoroughbreds and their owners whose substantial investments have been affected, including members of PRHOA. *See paragraphs 18-20 of the Amended Complaint.*

Plaintiff alleges that in the Second Complaint it "…submitted that in failing to properly maintain both the Racetrack and the training track, Camarero was in multiple violations of the Racing Regulation General Part and Licensing, specifically Sections 902, 903 and 918, and requested from the Commission that in the exercise of its powers order its Executive Director and Camarero to deliver all the contracted expert reports as to the condition of the Camarero Racetrack, for the Executive Director to submit a final report on his purported investigation, and that in turn Camarero be directed to correct the problems at the Racetrack and implement Dr. Peterson's now aged recommendations, including the use of the equipment recommended by him, all of which has been ignored by the Commission and Camarero." *See paragraph 23 of the Amended Complaint.*

Plaintiff claims that on March 26, 2024, it wrote to Mr. Ervin Rodriguez, Camarero's president, requesting access to the racetrack in order for its racetrack consultant, Mr. John Passero, inspect the racetrack and the equipment in use for its conditioning and maintenance, and render a report. PROHA claims that Mr. Rodriguez ignored its demands. *See paragraphs 28-29 of the Amended Complaint.*

Finally, it claimed that on April 2, 2024, it filed an Urgent Petition with the Gaming Commission "…for a peremptory order directed to Camarero for it to immediately grant access

to Mr. Passero for his examination of the Racetrack and the equipment utilized for its maintenance, for Mr. Passero to be able to render a report with his recommendations regarding the condition of the racetrack and for Camarero to simultaneously provide Mr. Passero with the information requested by him as indicated in paragraph twenty-seven (27) above, as well as all the reports on the racetrack by Camarero's experts…" *See paragraph 32 of the Amended Complaint*[5].

As to the crux of the matter before this Court, PROHA alleges that it has been precluded from exhausting administrative remedies by the Gaming Commission's acts and omissions in processing the First and Second Complaint, and the Urgent Petition, and that "[t]he acts and omissions of the Commission and Camarero, described herein, constitute illegal violations of PRHOA and its members, civil rights, all in violation of the Fifth and Fourteen Amendments[6] of the United States and 42 USC section 1983. Said acts and omissions are negligent or intentional, grossly negligent or intentional and taken in reckless disregard and deliberate indifference for the rights of PRHOA and its members." *See paragraphs 35 and 37 of the Amended Complaint.*

Because in its Complaint Plaintiff does not state a claim upon which relief can be granted, Camarero files this Motion to Dismiss Plaintiff's suit under Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure.

### III.   Argument

This Court has authority to dismiss a suit for failure to state a claim upon which relief can be granted if the Complaint clearly demonstrates that plaintiff cannot prove any set of facts that would entitle him to relief. *Hishon v. King & Spalding*, 467 US 69, 73 (1984).

---

[5] Paragraph 27 of the Amended Complaint did not deal with any information requested by Mr. Passero.

[6] Because in its Complaint Plaintiff does not state any factual claims regarding the Fourth, Eight and Ninth Amendments, the appearing Defendant does not address them in this motion.

## IV. The applicable standard

### A. Rule 12 (b)(1) and Rule 12 (b) (6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. For purposes of Rule 12, the Court must accept as true "all well-pleaded factual averments and indulge all reasonable inferences in the plaintiff's favor." *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir. 1996); *Berrios v. Bristol Myers Squibb Caribbean Corp.,* 51 F. Supp. 2d 61(D.P.R.1999).

On the other hand, under Fed.R.Civ.P. Rule 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction. "As courts of limited jurisdiction, federal courts must narrowly construe jurisdictional grants. *See e.g., Alicea-Rivera v. SIMED,* 12 F.Supp.2d 243, 245 (D.P.R. 1998). Consequently, the party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. *See Murphy v. United States,* 45 F.3d 520, 522 (1st Cir. 1995); *Droz-Serrano v. Caribbean Records Inc.,* 270 F. Supp. 2d 217 (D.P.R. 2003).

A motion brought under Rule 12(b)(1) is subject to the same standard of review as Rule 12(b)(6) motions. *Negron-Gaztambide v. Hernandez-Torres,* 35 F.3d 25, 27 (1st Cir. 1994); *Torres Maysonet v. Drillex, S.E.,* 229 F.Supp.2d 105, 107 (D.P.R. 2002). Under Rule 12(b)(6), dismissal is proper "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Gonzalez-Morales v. Hernandez-Arencibia,* 221 F.3d 45, 48 (1st Cir. 2000) (*quoting Correa-Martinez v. Arrillaga-Belendez,* 903 F.2d 49, 52 (1st Cir. 1990)). Under Rule 12(b)(1), dismissal would be proper if the facts alleged reveal a jurisdictional defect not otherwise remediable. *Id.* A complaint, so construed, must be dismissed under Rule

12(b)(1) if the Court lacks subject-matter jurisdiction to adjudicate its claims. *Iaria v. Today's TV, Inc*., 2019 U.S. Dist. LEXIS 53601, \*5 (D.P.R. 2019).

A court considering a Rule 12(b)(6) motion must view the plaintiff's complaint "through the prism of Fed.R.Civ.P. 8(a)(2)'s notice pleading requirements. *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1 (1st Cir. 2005). As stated by the Court,

> "A complaint satisfies that standard if it contains a 'short and plain statement of the claim showing that the pleader is entitled to relief' and 'gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id.

The Court is not obligated to accept plaintiff's "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson, supra.* The Court must only accept those facts that are "well pleaded," limiting its inquiry into the allegations of the complaint. *Litton Indus., Inc. v. Colon*, 587 F.2d 70, 74 (1st Cir. 1978).

Nevertheless, a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957); *Miranda v. Ponce Fed. Bank,* 948 F.2d 41 (1st Cir.1991).

In sum, the determination must be whether a liberal reading of the complaint can reasonably admit a claim. *Rogan v. Menino*, 175 F.3d 75 (1st Cir.1998). As a result, to survive a motion to dismiss, plaintiff must set forth "<u>factual</u> allegations, either direct or inferential, regarding each material element necessary to sustain recovery." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513 (1st Cir. 1988). The <u>allegations must be factual not conclusory,</u> and the court is not required to accept <u>legal conclusions</u> as true when considering a motion to dismiss. *New England Cleaning Services, Inc. v. American Arbitration Association,* 199 F.3d 542 (1st Cir. 1999).

The Supreme Court has stated that, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). As such, to survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face, not merely conceivable. *Id.* at 570. "The First Circuit has interpreted *Twombly* as sounding the death knell for the oft-quoted language of *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Rodriguez-Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 94-95 (1st Cir. 2007), [*6] quoting *Twombly,* 127 S. Ct. at 1969. Still, a court must "treat all allegations in the Complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff." *Rumford Pharmacy, Inc. v. City of East Providence,* 970 F.2d 996, 997 (1st Cir. 1992)." *Sanchez-Merced v. Pereira-Castillo*, 2010 U.S. Dist. LEXIS 27673, *5-6.

A "…plaintiff's complaint cannot simply be speculative in nature, but rather "must itself frame a viable constitutional claim." *Morales Tañón v. Puerto Rico Elec. Power Auth*., 524 F.3d 15, 18 (1st Cir. 2008). See also *Ocasio-Hernández*, 640 F.3d at 8 ("A complaint only 'shows' an entitlement to relief if its factual allegations are 'enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even in doubtful in fact).'" (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955)). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft, 556 U.S. at 664, 129 S.Ct. 1940." *Estancias de Cerro Mar, Inc. v. P.R. Aqueduct & Sewer Auth*., 2023 U.S. Dist. LEXIS 206686, *4.

As to federal question subject matter jurisdiction, "[a] plaintiff properly invokes §

1331 jurisdiction when [it] pleads a colorable claim 'arising under' the Federal Constitution

or laws." Id.; see Bell v. Hood, 327 U.S. 678, 681-685, 66 S. Ct. 773, 90 L. Ed. 939 (1946). If

a "federal court concludes that it lacks subject-matter jurisdiction, the complaint must be

dismissed in its entirety." Id. at 502. *Sanchez v. Davila*, 648 F. Supp. 2d 250, 254 (D.P.R.

2009).

## V.    Applicable law

**1.    Plaintiff's First Claim for Relief**

Plaintiff alleges that through its simulcasting activities of importing races from different

states for wagering at Hipódromo Camarero during local racing days, Camarero is engaged in

interstate commerce under the Interstate Horse Racing Act of 1978, 15 U.S.C. Ch. 57. It claims

that, consequently, PRHOA is entitled to an order from this Court directing Camarero to grant

access to Mr. Passero to the racetrack for his examination and the examination of equipment

used for maintenance, among other related remedies. *See paragraphs 41-43 of the Amended

Complaint*. This is a non sequitur.

The Interstate Horseracing Act of 1978 (the "IHA"), 15 U.S.C. § 3004(a), **regulates

interstate off-track wagering on horseracing**. In passing the IHA, "Congress recognized that

the unrestricted proliferation of off-track wagering would hurt the horseracing industry by

decreasing attendance at racetracks which, in turn, would reduce the number of horses needed to

compete and the number of individuals employed in the industry." *Kentucky Div., Horsemen's

Benev. & Protective Ass'n, Inc. v. Turfway Park Racing Ass'n, Inc.*, 20 F.3d 1406, 1414 (6th Cir.

1994). "Congress thus sought to support both the horseracing and interstate off-track wagering

industries, but to do so in a relatively narrow way that otherwise left states in control of gambling

within their borders. *See id*.; 15 U.S.C. § 3001." *New Eng. Horsemen's Benevolent & Protective Ass'n v. Mass. Thoroughbred Horsemen's Ass'n,* 210 F. Supp. 3d 270, 272 (2016).

Section 3005 of the Act provides in pertinent part that "[a]ny person accepting any interstate off-track wager in violation of this chapter shall be civilly liable for damages to the host State, the host racing association and the horsemen's group. Damages for each violation shall be based on the total of off-track wagers…". Section 3006 provides that [t]he host State, the host racing association, or the horsemen's group may commence a civil action against any person alleged to be in violation of this chapter, for injunctive relief to restrain violations and for damages in accordance with section 3005 of this title."

To prevail on their IHA claim, Plaintiff must prove that Camarero accepted an "interstate off-track wager" in violation of the IHA's provisions. 15 U.S.C. § 3005. *L.A. Turf Club v. Horse Racing Labs*, 2017 U.S. Dist. LEXIS 236040, *18. In its Complaint, Plaintiff makes no such allegation against Camarero. As in *Iaria*, *supra*, this Court must doubt "…**the existence of federal question jurisdiction where the basis seemingly rested on lip service to federal statutes, without any supporting factual allegations**". *Iaria,* at *4 (Emphasis added). The Complaint does not include facts that would indicate the existence of a federal controversy under the IHA. See *Díaz-O'Neill v. P.R. Aqueduct & Sewer Auth*., 2022 U.S. Dist. LEXIS 237951, *9 (D.P.R. 2022). Thus, it follows that Plaintiff's claim for relief under Article I, Section 8, Clause 3 of the United States Constitution[7] must be dismissed with prejudice, as the Court lacks subject matter jurisdiction, and Plaintiff has failed to state a claim upon which relief can be granted.

---

[7] The Commerce Clause grants Congress the power "[t]o regulate Commerce . . . among the several States[.]" U.S. Const. art. I, § 8, cl. 3. The Supreme Court has held the Commerce Clause gives Congress exclusive legislative jurisdiction over interstate commerce, meaning states may not enact laws that "unduly restrict interstate commerce." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2459, 204 L. Ed. 2d 801 (2019); *accord Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 6L. Ed. 23 (1824). This restriction on the states is commonly referred to as the

## 2.     Plaintiff's second claim for relief

Plaintiff's second claim for relief is made pursuant to the Fifth and Fourteenth Amendments of the Constitution of the United States. PROHA claims that the Gaming Commission and its members, as an arm of the Commonwealth of Puerto Rico, by failing to act on its First and Second Complaint, as well as its Urgent Petition, has deprived its members of their property <u>without due process of law</u>, by causing its members to race and exercise their thoroughbreds under adverse conditions, placing at risk its member's valuable property rights.

As to this second claim for relief, it asks the Court to order Camarero to grant access to Mr. Passero to the racetrack for his examination and the examination of equipment used for maintenance, among other related remedies. *See paragraphs 48-49 of the Amended Complaint*.

**No allegation is made against Camarero for violations under the Fifth and Fourteenth Amendments, as these amendments only apply to governmental action, and not to private action.** ***Allegiant Air, LLC v. Intl' Board of Teamsters*, 2023 U.S. App. LEXIS 7549, 2\*. Because this claim is not directed to the appearing party, it must be dismissed with prejudice.**

## Due Process

The <u>Due Process Clause of the Fifth Amendment</u> provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law ….]" U.S. Const. amend. V. The First Circuit has stated that the Fifth Amendment Due Process Clause, however, applies "only to actions of the federal government--not to those of state or local governments." *Lee* v. *City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001); *see also Morin* v. *Caire*, 77 F.3d 116, 120 (5th Cir.

---

"dormant Commerce Clause." *Tenn. Wine & Spirits*, 139 S. Ct. at 2459. *Styczinski v. Arnold*, 46 F.4th 907, 912 (2022).

1996) *Martinez-Rivera v. Ramos*, 498 F.3d 3, 8 (1st Cir. 2017). <u>To the extent that Plaintiff invokes its due process rights under the Fifth Amendment it fails to state a viable claim as to the Defendant since Camarero is not a federal actor.</u>

On the other hand, the <u>Due Process Clause of the Fourteenth Amendment</u> prohibits a state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Procedural due process requires a state to employ fair procedures when depriving a person of a protected interest; and (ii) substantive due process, guarantees that a state cannot deprive a person of a protected interest for certain reasons. *Gotovac v. Trejo*, 495 F. Supp. 3d 1186, 1208.

A. <u>Procedural due process</u>

Procedural due process ensures that government, when dealing with private persons, will use fair procedures. *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005). "Unlike substantive due process, which is concerned primarily with why the government deprives a person of life, liberty or property, procedural due process is concerned with how the government deprives a person of life, liberty or property. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Id.

In a procedural due process claim, a Plaintiff must show that it was deprived of a life, liberty, or property interest without the requisite minimum measure of procedural protection warranted under the circumstances. *Pastrana-Lopez v. Ocasio-Morales*, 2010 U.S. Dist. LEXIS 112386, *21 (D.P.R. 2010).

An essential component of a procedural due process claim is a protected property or liberty interest. *Minch v. City of Chi.*, 486 F.3d 294, 302 (7th Cir. 2007). Property interests are

not derived from the Constitution. Rather, property interests are created and have their contours defined by state law. Id., citing *Colon-Santiago v. Rosario*, 438 F.3d 101, 108 (1st Cir. 2006).

The First Circuit has established that under a procedural due process claim, the Court must (1) first ask whether there exists a liberty or property interest which has been interfered with by the State; (2) examine whether the procedures attendant upon that deprivation were constitutionally sufficient." *Harron v. Town of Franklin*, 660 F.3d 531, 537 (1st Cir. 2011).

Note that PROHA claims that "…it has been precluded from exhausting its administrative remedies by the Commission's acts or omissions in processing the First and Second Complaints and now the Urgent Petition…" *See paragraphs 33 and 35 of the Amended Complaint.* Plaintiff does not claim that the procedure established by Puerto Rico law failed to comply with the requirements of the Due Process Clause. Their postulate is, instead, that defendants' neglect in complying with Puerto Rico law deprived them of their due process rights. However, "[m]ere violations of state law do not, of course, create constitutional claims." *Roy v. City of Augusta,* 712 F.2d 1517, 1522-23 (1st Cir. 1983). Consequently, **it is an established principle that courts will not find a denial of due process in a deprivation of property case when the procedures in place are adequate, and the deprivation is the result of the failure of the state's agents to follow that procedure**. (Emphasis added). See *Vazquez-Rivera v. Santini*, 2006 U.S. Dist. LEXIS 19476, *11-12 (D.P.R. 2006), where a corporation claimed that the officials' disregard of the administrative procedures established in Puerto Rico's Uniform Administrative Procedure Act, P.R. Laws Ann. tit. 3 § 2101 et seq., violated their procedural due process rights, while the officials' failure to allow the development of their project infringed their substantive due process rights, this court concluded that because Puerto Rico had not yet refused to provide them with

review and redress, the corporation and the shareholders had not been deprived of property without due process.

In this case, PRHOA alleges that the Gaming Commission "…has deprived and is depriving the members of PRHOA of their property without due process of law by causing such members to race and exercise their thoroughbreds under adverse conditions to their safety and welfare, placing at risk the members of PRHOA's valuable property rights therein." *See paragraph 48 of the Amended Complaint.*

PRHOA does not allege that the ongoing procedures before the Gaming Commission are constitutionally insufficient. "In addition to showing that they had a liberty or property interest, plaintiffs must sufficiently plead that the defendants deprived them of that interest without a constitutionally adequate process. *Gonzalez-Droz*, 660 F.3d at 13. With regard to this second prong, plaintiffs must have the "notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). Due process requires an "opportunity to be heard at a meaningful time and in a meaningful manner." *Bibiloni del Valle de Puerto Rico*, 661 F.Supp.2d 155, 182 (D.P.R. 2009).

In this case, Plaintiff has failed to allege a cognizable procedural due process claim as it does not allege the unavailability of an adequate state remedy. It must be concluded that the combination of administrative and judicial remedies provided by Puerto Rico law are sufficient to meet the requirements of due process. *Hogar Club Paraiso, Inc. v. Llavona*, 208 F. Supp. 2d 178, 180 (D.P.R. 2002). Even assuming, arguendo, that PRHOA has a property interest, its procedural due process falls short as it did not allege that the administrative process of which it has availed itself is insufficient, and no stretch of the imagination could make a Court conceive that the process is constitutionally inadequate, based on the allegations of the Complaint.

Furthermore, Law No. 83-1987 provides that "[t]he final decisions, orders, or resolutions of the Commission may be reviewed by the Court of Appeals upon filing an appeal". *P.R. Laws Ann. tit. 15, § 198k(a).*

Consequently, Plaintiff's allegations do not state a claim upon which relief can be granted under its procedural due process claim against any defendant because it is evident from the facts alleged in the Complaint that PRHOA does not challenge the adequacy of the administrative process it initiated and is ongoing. Now, let us analyze its substantive due process claim.

B.    Substantive due process

"A substantive due process claim requires allegations that the government conduct was, in and of itself, inherently impermissible irrespective of the availability of remedial or protective procedures. *Amsden*, 904 F.2d at 753. The state conduct itself must be so brutal, demeaning, and harmful that it is shocking to the conscience. *See Rochin v. California*, 342 U.S. 165, 72 S. Ct. 205, 96 L. Ed. 183 (1952); *Amsden*, 904 F.2d at 754 ("state action must *in and of itself* be egregiously unacceptable, outrageous, or conscience-shocking")." *Maymi v. P.R. Ports Auth.,* 515 F.3d 20, 30 (D.P.R. 2008).

> [T]he question of whether the challenged conduct shocks the contemporary conscience is a threshold matter that must be resolved before a constitutional right to be free from such conduct can be recognized." DePoutot, 424 F.3d at 118.
>
> "First, we must determine whether the official's conduct shocks the conscience. Only if we answer that question affirmatively can we examine what, if any, constitutional right may have been violated by the conscience-shocking conduct and identify the level of protection afforded to that right by the Due Process Clause." DePoutot, 424 F.3d at 118. "To meet [his] burden on a substantive due process cause of action, the [plaintiff] must present a well-pleaded claim that a state actor deprived [him] of a recognized life, liberty, or property interest, and that he did so through conscience-shocking behavior." Estate of Bennett, 548 F.3d at 162. A "claim is cognizable as a violation of substantive due process 'only when it is so extreme and egregious as to shock [**61] the contemporary

conscience.'" McConkie v. Nichols, 446 F.3d 258, 260 (1st Cir. 2006) *(citing DePoutot, 424 F.3d at 118.)*

In describing which action "shocks the conscience" for substantive due process purposes, "[i]t has been said, for instance, that substantive due process protects individuals against state actions which are 'arbitrary and capricious,' or those that run counter to 'the concept of ordered liberty,' or those which, in context, appear 'shocking or violative of universal standards of decency.'" Cruz-Erazo, 212 F.3d at 622 *(citing* Amsden v. Moran, 904 F.2d 748, 753-54 (1st Cir. 1990)). "In order to shock the conscience, the conduct must be 'truly outrageous, uncivilized, and intolerable.'" McConkie, 446 F.3d at 260 *(citing* Hasenfus v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999)).

Deprivations resulting from negligent acts or omissions on the part of state officers are not actionable under due process provisions. Davidson v. Cannon, [*185] 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); Ramos-Pinero v. Puerto Rico, 453 F.3d 48, 54 (1st Cir. 2006). *See i.e.,* Pagan, 448 F.3d at 32 (substantive due process clause should not "serve as a means of constitutionalizing tort law"); McConkie, 446 F.3d at 261 [**62] ("negligent conduct, simpliciter, is categorically insufficient to shock the conscience"). Nor is substantive due process protection triggered by merely unsound or erroneous government decisions. Its use is limited to those specific instances involving egregious abuse of governmental power which the courts find shocking. Collins v. City of Harker Heights, 503 U.S. 115, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992).

Additionally, "violations of state law – even where arbitrary, capricious, or undertaken in bad faith – do not, without more, give rise to a denial of substantive due process". Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992). "The doctrine of substantive due process does not protect individuals from all governmental actions that infringe liberty or injure property in violation of some law. Rather, substantive due process prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests." PFZ Properties, 928 F.2d at 31-2 (citations and internal brackets and quotation marks omitted).

The very nature [**63] of this constitutional protection has caused that substantive due process protection be used sparingly. "Courts should guard against unduly expanding the concept of substantive due process 'because guideposts for responsible decisionmaking in this unchartered area are scarce and open ended'". S. County Sand & Gravel Co., Inc. v. Town of South Kingstown, 160 F.3d 834, 835 (1st Cir. 1998) *(citing* Collins v. City of Harker Heights, 503 U.S. at 125). Substantive due process, as a theory for constitutional redress, has in the past fifty years been disfavored, in part because of its virtually standardless reach." Nestor Colon-Medina, 964 F.2d at 45; Licari, 22 F.3d at 350.

*Bibiloni Del Valle v. Puerto Rico*, 661 F. Supp. 2d 155, 184-185 (D.P.R. 2009).

In this case, Plaintiff does not allege that the conduct complained of "shocks the conscience", not can a liberal reading of the Complaint allow such a conclusion.

Plaintiff also failed to allege a claim upon which relief can be granted as to the other defendants in this case, as Plaintiff has no viable due process claim.

**3.      Plaintiff's third claim for relief**

Just like in the second claim or relief, the third claim for relief is not directed to the appearing party. Here PROHA claims that the Gaming Commission and its members ignored its First and Second Complaint and its Urgent Petition, while acting under color of state law, depriving it and its members of right to their procedural and substantive due process.

**42 U.S.C. § 1983**

As stated above, Plaintiff brought this suit pursuant to 42 U.S.C. § 1983, alleging violations of the Fifth and Fourteenth Amendments to the United States Constitution, as well as supplemental Puerto Rico claims. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Section 1983 does not create substantive rights, but it provides a cause of action through which a plaintiff can vindicate federal rights. Courts determine liability under this section by

examining: "(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 558 (1st Cir. 1989); and "that defendant's alleged conduct was causally connected to the Plaintiff's deprivation". *López v. Unión de Trabajadores de la Industria Eléctrica*, 392 F.Supp.3d 263, 273, 274 (2019). For the purposes of § 1983, Puerto Rico is deemed as a state. Id.

Acting under color of state law requires that a "defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with authority of state law." *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941)). The first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed. Maldonado-Gonzalez v. P.R. Aqueducts & Sewer Auth., 2023 U.S. Dist. LEXIS 49888, *10, citing *Fernandez-Fernandez v. Municipality of Bayamon*, 942 F. Supp. 89, 93 (D.P.R. 1996) (citing *Albright*, 510 U.S. at 269-271).

> Generally speaking, 42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." To state a claim under that statute, a plaintiff must assert two allegations: (1) "that some person deprived [her] of a federal right," and (2) that such person "acted under color of state or territorial law." Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980) (citing Monroe v. Pape, 365 U.S. 167, 171, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961)). [**4] Significantly, § 1983 does not apply to "'merely private conduct, no matter how discriminatory or wrongful.'" American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999) (quoting Blum v. Yaretsky, 457 U.S. 991, 1002, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982)).

*Grapentine v. Pawtucket Credit Union*, 755 F.3d 29, 31 (1st Cir. 2014).

As stated above, the third claim is not directed to Camarero. Even if it were, Plaintiff has failed to state a claim under the Fifth and Fourteenth Amendment as Camarero is not a "person" within the meaning of § 1983. Thus, this claim must also be dismissed.

"**It is axiomatic that section 1983 imposes liability only upon those who actually cause a deprivation of rights**. See *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986); *Camilo-Robles v. Zapata*, 175 F.3d 41 (1st Cir. 1999)." (Emphasis ours). *Alvarez v. Puerto Rico*, 218 F. Supp. 2d 170, 175 (D.P.R. 2012).

> Section 1983 "affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right."5 Omni Behavioral Health v. Miller, 285 F.3d 646, 650-651 (8th Cir. 2002) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 816, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985). It creates "no independent substantive right, but rather, provides a cause of action by which individuals may seek money damages for governmental violations of rights protected by federal law." Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 621 (1st Cir. 2000).

> It is well-settled that in order for a claim to be cognizable under section 1983, the Court must assess: "(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of the rights, privileges or immunities secured by the Constitution or laws of the United States. There are two aspects to this second inquiry: (1) there must have been a deprivation of federally protected rights, privileges or immunities, and (2) the conduct complained of must have [**13] been causally connected to the deprivation." Gutierrez Rodriguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989) (citations omitted).

*Medina-Medina v. Puerto Rico*, 769 F. Supp. 2d 77, 82 (D.P.R. 2011).

A defendant has to be a "person," because section 1983 only imposes liability on "persons." See, e.g., *Martinez Velez v. Simonet*, 919 F.2d 808, 810 (1st Cir. 1990). "The Supreme Court has held that a state, **its agencies, and state officials acting in their official capacities** are not "persons" within the meaning of section 1983 and cannot be sued in a section 1983 action.

*Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)." *Medina-Medina v. Puerto Rico*, 769 F. Supp. 2d 77, 82 (D.P.R. 2011).

Because the Commonwealth is not a "person" for section 1983 purposes, and plaintiff makes no claim that Camarero acted under the color of state law, plaintiff does not have a cognizable cause of action against any of the defendants under section 1983.

Even though the individual defendants were brought under their personal capacity, the section 1983 claim against them must be dismissed on various grounds. The individual defendants are Manuel Cidre Miranda (the Executive Director of the Gaming Commission), Antonio Ramos Guardiola, Carlos Rodríguez Mateo, Ray J. Quiñonez, Carlos Mercado Santiago and Cristobal Méndez Bonilla (members of the Gaming Commission) and Juan Carlos Santaella Marchand (the Executive Director of the Gaming Commission). We note that no specific allegations are made against these defendants in their personal capacity. Thus, Plaintiff has failed again to adequately plead a cognizable claim against them in their personal capacity. See *Valdés v. Hernández*, 2023 U.S. Dist. LEXIS 217493, *12 (D.P.R. 2023).

Furthermore, the Eleventh Amendment bars Plaintiff's Section 1983 claims for damages, against Defendants in their official capacities. The Eleventh Amendment bars suits against states for money damages unless the state has consented. See *Metcalf & Eddy v. P.R. Aqueduct & Sewer Auth.*, 991 F.2d 935, 938 (1st Cir. 1993). This immunity extends to a state's agencies when they are arms of the state. *See Pastrana-Torres v. Corporación de P.R. Para La Difusión Pública*, 460 F.3d 124, 126 (1st Cir. 2006); *Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of Com. of Puerto Rico*, 818 F.2d 1034, 1036 (1st Cir. 1987).

Puerto Rico has been treated as a state for Eleventh Amendment purposes. *See, e.g., Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*, 958 F.3d 26, 33 (1st Cir.

2020). Eleventh Amendment immunity extends to Commonwealth officials acting in their official capacities. *See Hernández-Zorrilla*, 2021 U.S. Dist. LEXIS 92490, 2021 WL 1931956, at *3 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989), *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985), and *Pagán-García v. Rodríguez*, No. 14-1385 DRD, 2015 U.S. Dist. LEXIS 114907, 2015 WL 5084640, at *6 (D.P.R. Aug. 27, 2015)). This immunity operates to bar suits in federal court that seek to recover monetary damages against Commonwealth officials sued in their official capacities. *See Cornavaca v. Rios-Mena*, 18 F. Supp. 3d 105, 116 (D.P.R. 2014) (citing *Wang v. N.H. Bd. of Registration in Med.*, 55 F.3d 698, 700 (1st Cir. 1995)). As such, it must be concluded that there is no valuable claim against them on Eleventh Amendment grounds. *Mangual v. Toledo*, 536 F. Supp. 2d 127, 131 (D.P.R. 2008).

**4.    Plaintiff's fourth claim for relief**

Plaintiff's fourth claim for relief is for damages under state law. As Plaintiff's alleged federal claims must fail, dismissal of its federal claims will remove federal question jurisdiction, under 28 U.S.C. § 1331.

Federal courts are "courts of limited jurisdiction [and] [t]hey possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005). Congress has conferred on district courts subject matter jurisdiction in federal question cases under 28 U.S.C. § 1331, diversity of citizenship cases under 28 U.S.C. § 1332, and supplemental jurisdiction under 28 U.S.C. § 1367 where a court has original jurisdiction over some claims in the action. *Id.; see also Adames v. Taju*, 80 F. Supp. 3d 465, 467 (E.D.N.Y. 2015).

A court exercises supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Thomas v. Eony LLC*, No. 13-CV-8512 (JPO), 2015 U.S. Dist. LEXIS 52290, 2015 WL 1809085, at *4 (S.D.N.Y. 2015) (citing 28 U.S.C. § 1367(a)); *see also Torres*, 628 F. Supp. 2d at 468. "[C]ounterclaims raising issues of state law are part of the 'same case or controversy' where they share a 'common nucleus of operative fact' with the plaintiff's underlying claim." *Torres*, 628 F. Supp. 2d at 468; *see also Noriko Ozawa v. Orsini Design Assocs.*, No. 13-CV-1282 (JPO), 2015 U.S. Dist. LEXIS 29933, 2015 WL 1055902, at *11 (S.D.N.Y. Mar. 11, 2015) (holding that the common nucleus of operative fact must stem from the underlying claims "at the time of filing" of the original pleading).

A common nucleus of operative fact exists where "plaintiff 'would ordinarily be expected to try them all in one judicial proceeding." *Thomas*, 2015 U.S. Dist. LEXIS 52290, 2015 WL 1809085, at *4 (citing *Montefiore Med. Ctr.*, 642 F.3d at 332). Courts look to "whether the facts underlying the federal and state claims substantially overlapped or the federal claim necessarily brought the facts underlying the state claim before the court." *Id.* A common nucleus of operative fact does not exist where the state law claims "involve[d] different rights, different interests, and different underlying facts" than the federal claims. *Torres*, 628 F. Supp. 2d at 468; *see also Thomas*, 2015 U.S. Dist. LEXIS 52290, 2015 WL 1809085, at *4 ("supplemental jurisdiction should not be exercised 'when the federal and state claims rest on essentially unrelated facts.'"). *Anwar v. Stephens*, 2016 U.S. Dist. LEXIS 102816, *5-6**.**

Consequently, Plaintiff's supplemental local claims must also be dismissed, as dismissal is appropriate if the federal question claims are eliminated early in the proceedings. See *Martinez v. Colón,* 54 F.3d 980 (1ˢᵗ Cir. 1995).

## VI. Conclusion

Treating all the allegations of the Amended Complaint as true and drawing all reasonable inferences in favor of the plaintiff, this claim should be dismissed in its entirety, with prejudice, against the appearing defendant, as plaintiff cannot prove any set of facts in support of its claim which would entitle it to relief.

**WE HEREBY CERTIFY** that on this date a true and exact copy of this motion has been sent through electronic filing using the CM/ECF system to the attorneys of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 9ᵗʰ day of June of 2024.

> **MANUEL PORRO VIZCARRA**
> **LAW OFFICES**
> Calle Escorial 382
> Urb. Caparra Heights
> San Juan, P.R. 00920
> Telephone 787-774-8200
> Facsimile 787-774-8297
>
> **/S/Manuel Porro-Vizcarra**
> USDC # 207006
> mpv@mpvlawpr.com
>
> **/S/Luz Yanix Vargas Pérez**
> USDC # 221502
> licyanixvargas@yahoo.com
>
> **/S/Myrmarie Laborde Vega**
> USDC # 226107
> ml@mpvlawpr.com