**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| PUERTO RICO HORSE OWNERS ASSOCIATION, INC.<br><br>*Plaintiff*<br><br>GAMING COMMISSION OF THE GOVERNMENT OF PUERTO RICO; MANUEL CIDRE MIRANDA, and his spouse JANE DOE I and their conjugal partnership; ANTONIO RAMOS GUARDIOLA, and his spouse JANE DOE II and their conjugal partnership; CARLOS RODRÍGUEZ MATEO, his spouse JANE DOE III and their conjugal partnership; RAY J. QUIÑONEZ, his spouse JANE DOE IV and their conjugal partnership; CARLOS MERCADO SANTIAGO, his spouse JANE DOE V and their conjugal partnership; CRISTOBAL MÉNDEZ BONILLA, his spouse JANE DOE VI and their conjugal partnership; JUAN CARLOS SANTAELLA MARCHÁN, his spouse JANE DOE VII and their conjugal partnership; CAMARERO RACE TRACK CORP.<br><br>*Defendants* | **Civil No. 24-01194**<br><br>Re: Violation of Civil Rights 42 U.S.C. §§1981, 1983 and 1988<br><br>Jury Trial Demanded |

**PLAINTIFF'S RESPONSE TO CODEFENDANT CAMARERO RACETRACK CORPORATION'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT PREMISED UPON FEDERAL RULES OF CIVIL PROCEDURE, RULE 12(b)(1) AND RULE (b)(6)**

**TO THE HONORABLE COURT:**

COMES NOW, Plaintiff, Puerto Rico Horse Owners Association, Inc. ("PRHOA"), through its undersigned counsel, and respectfully responds to Camarero Race Track Corporation's ("Camarero") motion to dismiss PRHOA's amended complaint pursuant to Rule 12(b)(1) and (6) (the "Motion to Dismiss") as follows:

## I.  INTRODUCTION

1.      On April 26, 2024, PRHOA, a not for profit corporation established on January 29, 2013 under the General Corporation Law of Puerto Rico, with corporation number 321385 at the

Department of State of Puerto Rico and composed of 150 active duly licensed thoroughbred horse owners by the Gaming Commission of the Government of Puerto Rico (the "Commission") granting them the right to enter their horses in the official races conducted at Camarero Racetrack, owned and operated by Camarero at Canóvanas, Puerto Rico, the only racetrack existing in Puerto Rico, under the authority and supervision of the Commission, filed a complaint against the defendants (**Docket No. 1**), amended on April 29, 2024 (**Docket No. 3**) and on April 30, 2024 (**Docket No. 9**) (the "Complaint").

2.      The Complaint is premised on the deficient condition of the main racing surface (the "Track") at Camarero Racetrack, resulting from its lack of proper maintenance and conditioning by Camarero in concert with the Commission and its members by failing to comply with their obligations under Law No. 81-2019, of July 29, 2019, as amended, 15 LPRA Section 981, et seq., known as the Law of the Gaming Commission of the Government of Puerto Rico (the "Gaming Commission Law"), vesting the Commission with jurisdiction to regulate all aspects of the thoroughbred racing industry and sport in Puerto Rico, as set forth in Law 83 of July 2, 1987, as amended, 15 LPRA Section 198 et. seq., known as the Law of the Industry and the Racing Sport in Puerto Rico (the "Racing Act") and applicable regulations, including supervising Camarero's activities, the Commission and its members not doing so, tolerating the existing conditions of the Track, in contravention of Camarero's license to operate the same.

3.      Camarero's aforesaid negligent acts tolerated by the Commission and its members, and their concerted negligence in allowing Camarero to maintain a dangerous Track in concert therewith contrary to the Commission and its members' legal obligations of enforcing the Gaming Commission Law, the Racing Act and applicable regulations to assure the proper condition and maintenance of the racing surface both during training hours and during the official races, safeguarding the safety and wellbeing of the valuable thoroughbreds belonging to the members of

PRHOA, in which they invest thousands of dollars, as well as the safety and wellbeing of the exercise riders who work PRHOA's members' horses during the morning, and the jockeys who also ride them as part of their morning exercise and during the official races.

4.      The Complaint invokes the jurisdiction of this Court pursuant to 28 U.S.C. Section 1331, 1337(a) and 1343(a), as arising under the Fifth and Fourteenth Amendments to the Constitution of the United States of America (the "Constitution"), Article 1, Section 8; Clause 3 of the Constitution; and 42 U.S.C. Section 1983.

5.      On June 9, 2024, Camarero filed the Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and (b)(6) (**Docket No. 21**) (the "Motion to Dismiss"), averring that PRHOA's only federal claim against Camarero is immaterial to the facts alleged in the Complaint, made only for obtaining jurisdiction, as no federal statutes apply thereto,  that PRHOA fails to state a claim upon which relief can be granted and consequently supplemental jurisdiction over Camarero is absent.

6.      As the well pleaded allegations of the Complaint, as discussed below, show the Motion to Dismiss is ill-founded and should be denied.

**Facts Arising from the Well Pleaded Allegations of the Complaint as to Camarero**

7.      Camarero is the owner and operator of Camarero Racetrack and responsible for maintaining and conditioning the Track and the training track to ensure the safety of the riders and the race horses during the morning workouts, as well as during race days, a condition for the issuance by the Commission to Camarero of the license to operate Camarero Racetrack.

8.      On February 18, 2022, (over twenty-six months ago), PRHOA filed an official complaint with the Executive Director of the Commission regarding the condition of the Track (the "First Complaint"), which was assigned to administrative judge José Martínez Ramos, who after some administrative proceedings improperly determined that he lacked jurisdiction to consider the First Complaint, because allegedly the Executive Director had commenced a parallel

investigation on the Track and Mr. Martínez understood that the results of that so called investigation should be completed first.

9.    In the meantime, the conditions of the Track continued to deteriorate further endangering the safety and welfare of the riders and of the thoroughbreds working out in the morning and racing during the official races conducted at Camarero Racetrack.

10.    With no results from the alleged secret investigation by the Executive Director on the conditions of the Track, and the continuing deterioration of the Track due to its improper maintenance and conditioning, and the lack of the proper equipment to do so, further placing in jeopardy the safety of the riders and thoroughbreds working out and racing thereat, and in view of Camarero's, the Commission and its members' joint lackadaisical attitude and hands down *modus operandi* in meeting their obligations under the Gaming Commission Law, the Racing Act and Racing Regulation Number 8944 approved on April 6, 2017 by the Secretary of State of Puerto Rico ("Regulation No. 8944"), of ensuring the safety of the Track and further considering the very substantial investment in the purchase of their thoroughbreds by its members, almost two years from the First Complaint, PRHOA on January 12, 2024, filed a second complaint with the Commission as to the condition of the Track (the "Second Complaint") making reference to the First Complaint.

11.    The Second Complaint, PRHOA underscored that, almost two years after the First Complaint, the results of the purported investigation by the Executive Director had not been revealed, understanding that the same had not been concluded or conducted, as it has not been to date, and that on December 16, 2023, during the first race of the official racing program for said date, the mare Abuela Cuca suffered a catastrophic injury, due to the condition of the Track, and following the complaint of the jockeys, the Racing Stewards, with total authority of the official racing activities after their commencement, cancelled the remaining races scheduled for that day,

underscoring the need for the immediate conclusion of the then almost two years belated investigation on the condition of the Track by the Executive Director, as an integral part of which the Executive Director was to consider the matters raised by PRHOA in the First Complaint, including if Camarero had implemented the recommendations of Dr. Michael Leroy Peterson ("Dr. Peterson"), Camarero's expert, as to the equipment to be utilized for the maintenance and conditioning of the Track, which to date has not been purchased.

12.    The Second Complaint, as to which the Commission and its members have failed to act, also requested that for the benefit of the Industry and the Racing Sport Administration, Camarero and/ or the Commission and its members provide all of Dr. Peterson's or his team's reports on the condition of the Track with Dr. Peterson's recommendations, and for Camarero to file a report as to their implementation, bringing to the attention of the Commission and its members accidents at the Track suffered by jockeys and thoroughbreds, which have adversely impacted PRHOA's members as owners thereof, whose substantial investments therein have been affected.

13.    The problems of the Track are of a serious nature, placing at risk the safety of the riders and the thoroughbreds in use thereof.

14.    In order to fix such problems, a soil study, inspection of the Track's base, the composition of the sand serving as cushion over the base of the Track and its depth, the Track's drainage system and the use of proper equipment are required, all of which can't be accomplished in three (3) days during Holy Week as pretended by Camarero, obviously failing to correct the evident problems of the Track, which as the date hereof persist, Camarero having to order its closing for morning workouts on Saturday, April 13, 2024, and subsequent dates.

15.    To underscore the present and clear danger evidenced by the Track, on April 21, 2024, the Racing Stewards again, after the second race scheduled for that day, had to cancel the

remaining official races due to the unsafe condition of the Track. Also, the morning workouts for April 22, 2024, had to be cancelled.

16.     Considering the present dangerous condition of the Track, putting at risk the life of the riders and the thoroughbreds, the lack of joint remedial action by the Commission, its members and Camarero, in a good faith effort and for the purpose of assisting in the correction of that condition, prior to the subsequent events set forth above which underscore PRHOA's actions, on March 26, 2024, the undersigned wrote to Mr. Ervin Rodríguez Vélez ("Rodríguez"), Camarero's president, requesting that access to the Track be granted to Mr. John Passero ("Passero"), one of the foremost racetrack consultants in the United States and Canada, and familiar with the Track, for Mr. Passero to inspect the Track and the equipment in use for its conditioning and maintenance, and render a report directed to resolving the Track's evident problems, free of cost to Camarero. Mr. Passero's qualifications as an expert in thoroughbred racetracks appear in **Exhibits A, B, C, D** and **E** to the Complaint.

17.     On March 28, 2024, Mr. Rodríguez, in a conclusive, challenging manner, ignoring the reality of the Track, taking advantage of the Commission and its members' inaction, *ipso facto*, ignored PRHOA's request for access to Mr. Passero, evading the purpose of PRHOA's letter, proceeding with an unnecessary frivolous debate as to the condition of the Track, implying in his answer having the endorsement of the Commission as to his opinionated conclusions, devoid of any factual support and contrary to the reality of the Track, which as, *inter alia*, as held in the judgment of March 3, 2023, in Case No. FBCI2017-0646, since 2016 suffers from dangerous conditions, such as lack of consistency, unevenness, humidity, compaction and lack of effective maintenance.

18.     Specifically, in its conclusions, the State Court in Case No. FBCI2017-0646 states at paragraphs 38 and 40**,** that the Track, in general terms and in particular its final stretch in the

mile and one sixteenth area, suffers of dangerous conditions, the direct cause of the damages suffered by Charming Tam, as well as the damages suffered by other horses, as the evidence showed that as well as before the occurrence of Charming Tam's accident in the final stretch and thereafter, the Track in that area is in bad condition, due to having consistency problems, unevenness, problems of humidity, lack of compaction and lack of effective maintenance, among others.

19.    In his correspondence as to his availability, Mr. Passero requested **as** a preliminary matter the following information, requested by PRHOA from Camarero, trough Mr. José Antonio Hernández Tirado, Camarero's Director of Facilities and Utilities, who in turn referred PRHOA's request to Camarero's senior management, which in line with Mr. Rodríguez's answer of March 28, 2024, Camarero has refused to provide:

(i)  Depth of cushion

(ii) Depth of base

(iii) What is below the base? (iv) Are cushion and base similar? (v) How many gallons in trucks?

(vi) Measurement from top of rail to top of cushion every 1/16 of a mile.

(vii) Is truck emptied in one round?

(viii) How many loads of water are on the running lanes on race days?[1]

20.    Considering Camarero's position coupled with the Commission and its members' reiterated failure to act on PRHOA's request**s** for remedies regarding the condition of the Track, allowing Camarero to continue with its unbridled negligent disregard for the safety and wellbeing

---

[1] Dr. Peterson himself, Camarero's expert during his testimony in Case No. FBCI2017-0646, made several recommendations and observations regarding: (a) improving equipment, including the purchase of two new water trucks ; (b) trucks with long arm and separate engine to be able to spray water evenly; (c) found that the trucks had diagonal ply tires and other radial tires with very high pressure. Tire pressure can cause more compaction; (d) recommended maintaining level consistency at the base of the track and inconsistency should be reduced; and (e) that consistent padding is required so that there is a consistent load on the horse's legs.

of the horses and their riders, and therefore Camarero, the Commission and its members acting in concert, on April 2, 2024, PRHOA filed an Urgent Petition with the Commission for a peremptory order directing Camarero to immediately grant access to Mr. Passero for his examination of the Track and the equipment utilized for its maintenance for Mr. Passero to render a report with his recommendations regarding the condition of the Track and simultaneously Camarero providing Mr. Passero with the information requested by him as indicated in paragraph nineteen (19) above, as well as all the reports on the Racetrack by Camarero's experts (the "Urgent Petition").

21.    As with the case of the First and Second Complaints, the Commission, its members and Camarero have ignored the Urgent Petition.

22.    To make things worse on April 22, 2024, making evident its obstinacy and disregard for the well-being of the riders and thoroughbreds in use of the Track, Camarero answered the Urgent Petition filed in case number NH-24-03 with the Commission by, *inter alia*, sustaining that since Camarero is a private entity it doesn't have any legal obligation to share the requested information with third parties, that the reports are confidential in nature and their disclosure is not supported by any legal provision requiring their submittal to PRHOA.

23.    The condition of the Racetrack resulting in the suspension of the official races and the morning workouts, coupled with the injuries suffered by the thoroughbreds owned by the members of PRHOA, have caused PRHOA's members substantial damages, estimated in not less than $500,000.00, due to the resulting loss of purse money and of the investment therein.

24.    The acts and omissions of the Commission and its members in concert with Camarero, as described above, constitute an illegal violation of PRHOA and its members' civil rights, in violation of the Fourth, Fifth, Eight, Ninth and Fourteen Amendments of the Constitution and 42 USC section 1983. Said acts and omissions are grossly negligent or intentional and taken in reckless disregard and deliberate indifference of the rights of PRHOA and its members.

25.     In support of the Motion to Dismiss, Camarero sustains that: (A) PRHOA's only federal claim against Camarero is immaterial to the facts alleged in the Complaint, made only for obtaining jurisdiction, as no federal statutes apply thereto; and (B) that PRHOA fails to state a claim upon which relief can be granted and consequently supplemental jurisdiction over Camarero is absent.

### Standards for Granting Motions to Dismiss Under Fed. R. Civ. P. 12(b)(1) and (b)(6)

26.     Rule 12(b)(1) and (b)(6) provide:

> (b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
>> (1) lack of subject-matter jurisdiction
>>                          ….
>
>> (6) failure to state a claim upon which relief can be granted.

27.     Under Fed. R. Civ. P. Rule 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction. "As courts of limited jurisdiction, federal courts must narrowly construe jurisdictional grants. *Alicea-Rivera v. SIMED*, 12 F.Supp.2d 243, 245 (D.P.R. 1998). Consequently, the party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995); *Droz-Serrano v. Caribbean Records Inc.*, 270 F. Supp. 2d 217 (D.P.R. 2003).

28.     A motion brought under Rule 12(b)(1) is subject to the same standard of review as Rule 12(b)(6) motions. *Negron-Gaztambide v. Hernández-Torres*, 35 F.3d 25, 27 (1st Cir. 1994); *Torres Maysonet v. Drillex, S.E.*, 229 F.Supp.2d 105, 107 (D.P.R. 2002). Under Rule 12(b)(6), dismissal is proper "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *González-Morales v. Hernández-Arencibia*, 221 F.3d 45, 48 (1st Cir. 2000) (quoting *Correa-Martínez v. Arrillaga-Belendez*, 903 F.2d 49, 52 (1st Cir. 1990)).

Under Rule 12(b)(1), dismissal would be proper if the facts alleged reveal a jurisdictional defect not otherwise remediable. *Id.* A complaint, so construed, must be dismissed under Rule12(b)(1) if the Court lacks subject-matter jurisdiction to adjudicate its claims. *Iaria v. Today's TV, Inc.*, 2019 U.S. Dist. LEXIS 53601, *5 (D.P.R. 2019).

29.     A court considering a Rule 12(b)(6) motion must view the plaintiff's complaint "through the prism of Fed. R. Civ. P. 8(a)(2)'s notice pleading requirements. *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1 (1st Cir. 2005). As stated by the Court:

> "A complaint satisfies that standard if it contains a 'short and plain statement of the claim showing that the pleader is entitled to relief' and 'gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.*

30.     Fed. R. Civ. P. 12(b)(6) states "failure to state a claim upon which relief can be granted" as one of the defenses to a claim for relief which may be made by motion.

31.     To state a claim upon which relief may be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Skinner v. Switzer*, 562 U.S. 521, 530 (2011), citing 5 C. Wright & A. Miller, Federal Practice & Procedure § 1219, pp. 277-278 (3rd ed. 2004 and Supp. 2010).

32.     Although Fed. R. Civ. P. 8(a)(2) does not explicitly require "[d]etailed factual allegations", it demands "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

33.     The First Circuit "has established a two-step standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6)." S*chatz v. Republican State Leadership Committee*, 669 F.3d 50, 55 (1st Cir. 2012).

34.     Step one:  the Court must "isolate and ignore statements in the complaint that

simply offer legal labels and conclusions or merely rehash cause of action elements." *Burk v. Paulen*, 2015 WL 1578704, at *4 (D.P.R. 2015) citing Republican State Leadership Comm., 669 F. 3d at 55. Step two: the Court must "take the complaint's well-pled (i.e., non-conclusory, nonspeculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Paulen*, 2015 WL 1578704, at *4.

35.    The Motion to Dismiss does not aver any facts or argument to conclude that the Complaint does not state a claim to relief that is plausible on its face, that would warrant its dismissal under Fed. R. Civ. P. 12(b)(1), or (b)(6). Hence, its request for dismissal has to be denied. Moreover, the Complaint pleads with sufficient particularity the relief sought.

36.    The Complaint pleads with particularity the concerted action of the Commission, its members and Camarero of disregarding their joint obligations under the Gaming Commission Law, the Racing Act and Regulation No. 8944 to PRHOA and its members of ensuring the safety of the Track by its proper maintenance and conditioning, causing its dangerous condition with the resulting adverse effects on the horses belonging to members of PRHOA, to the economic and emotional detriment of such members.

37.    It is black letter law that for purposes of a motion to dismiss, the Court takes as true all well pleaded facts on the operative pleading and draws all reasonable inferences arising therefrom in the plaintiff's favor. *Rundle v. Merrimack Valley Hosp.*, 45 F. Supp. 3d 137 (D.C. Mass. 2014).

38.    In deciding a Rule 12(b)(6) motion to dismiss, "the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face". *United States v. Ford Motor Co.*, 532 F.3d 496, 502 (6th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

39.    The Complaint contains sufficient factual matters, accepted as true, to state a claim for relief plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. at 676

40.    Dismissal for failure to state a claim is only appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," not the situation here. *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997) quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988).

41.    A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant, as here, has acted unlawfully. See *Twombly*, 550 U.S. at 556

## II.  DISCUSSION

42.    As previously stated, Camarero sustains that PRHOA cannot prove any set of facts in support of the Complaint which would entitle it to relief. PRHOA will address Camarero's arguments individually as follows:

### i.   First Claim for Relief: Article I, Section 8, Clause 3 of the United States Constitution

43.    Article I, Section 8, Clause 3 of the Constitution refers to the Commerce Clause, which gives Congress the power to regulate commerce with foreign nations, among states and with Indian Tribes.

44.    Through its simulcasting in activities of importing races from different states for wagering at Camarero Racetrack during race days, Camarero is engaged in interstate commerce under the Interstate Horseracing Act of 1978 (the "IHA"), 15 USC Ch. 57, regulating Camarero's simulcasting activities and thereby granting Congress the power to regulate such activities,

including safeguarding the welfare of the jockeys and the thoroughbreds that exercise and race at the Track.

45.   Camarero sustains that in order for PRHOA to prevail on its claim under the IHA, it must prove that Camarero accepted an "interstate off-track wager" in violation of the IHA's provisions, and therefore the Complaint does not include facts that would indicate the existence of a federal controversy.

46.   However, as a result of the cancellation of the races due to the conditions of the Track, adversely affecting the attendance of the betting public at Camarero Racetrack to bet on the imported simulcast in races from racetracks in the United States, which can only be placed at Camarero Racetrack on race days and the lack of enforcement by the Commission and its members of the Gaming Commission Law, the Racing Act, Regulation No. 8944, and Camarero's disregard thereof, the Commission, its members and Camarero jointly  have attempted to directly assert jurisdiction over property outside Puerto Rico's territory, exceeding the limits of their powers. In so doing the Commission, its members and Camarero, in causing the suspension of the races by improperly maintaining the Track the Commission, its members and Camarero are contravening the United States Congress' policy set forth in the IHA to regulate interstate commerce with respect to wagering on horseracing, in order to further horseracing. (See 15 USC §3001 (b)[2])

**ii. Second Claim for Relief: Fifth and Fourteenth Amendments of the Constitution**

47.   The Fifth Amendment to the Constitution provides that no person shall be deprived of life, liberty, or property, without due process of law.

48.   In turn the Fourteenth Amendment to the Constitution, *inter alia*, provides that no state shall deny to any person within its jurisdiction the equal protection of the laws.

---

[2]  It is the policy of the Congress in this chapter to regulate interstate commerce with respect to wagering on horseracing, in order to further the horseracing and legal off-track betting industries in the United States.

49.  PRHOA avers that by the Commission and its members, as an arm of the Commonwealth in concert with Camarero, by failing to act on PRHOA's First and Second Complaint, as well as on the Urgent Petition regarding the poor condition of the Track, have deprived and are depriving the members of PRHOA of their property without due process of law, by causing them to race and exercise their thoroughbreds under adverse conditions to their safety and welfare, placing at risk the members of PRHOA's valuable property rights therein.

50.  It is Camarero's position that in the second claim for relief, there is no allegation made against Camarero for violations under the Fifth and Fourteenth Amendments, as these amendments apply to governmental actions and not private actions.

51.  However, as held by the District Court in *Patty v. New England Tel. & Tel. Co.*, 745 F. Supp. 806 (Dist. R.I. 1990), while traditional Fourteenth Amendment analysis requires an act of the state or a state official, the Supreme Court, over the years, has developed several tests to determine whether private conduct, such as Camarero's conduct, can be sufficiently official in character as to be attributable to the state. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 42 L. Ed. 2d 477, 95 S. Ct. 449 (1974). The Supreme Court in *Jackson* went on to examine the challenged activity from three approaches: the nexus between the state regulations and the challenged activity; the extent to which the utility's business was one traditionally reserved to the state; and the existence of a symbiotic relationship between the state and the utility. In other cases, the Court has looked for joint action by the state and private parties *Lugar v. Edmondson Oil Co.*, Inc., 457 U.S. 922, 73 L. Ed. 2d 482, 102 S. Ct. 2744 (1982), or a conspiracy between state officials and the private party *Adickes v. Kress & Co.*, 398 U.S. 144, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970), *Tower v. Glover*, 467 U.S. 914, 81 L. Ed. 2d 758, 104 S. Ct. 2820 (1984).  *Patty v. New England Tel. & Tel. Co.*, supra at page 811.

52.  Following the same three (3) approaches used by the Supreme Court in *Jackson,*

here (1) there is a direct nexus between the Commission Law, the Racing Act and Regulation No. 8944 under which the Commission, its members, and Camarero acting in concert by disregarding their obligations thereunder and causing the unsafe condition of the Track, the challenged activity; (2) the control and regulation of the horseracing business in Puerto Rico has traditionally been reserved to the state; and (3) there is a clear symbiotic relationship between the Commission, its members and Camarero, who are acting in concert by ignoring PRHOA's well founded complaints and requests.

53.    The other test explained by the District Court in *Patty* is to look for joint action by the state [the Commission and its members] and private parties [Camarero], or a conspiracy between state officials and the private party. In the instant case, there is clearly, at the very least, a joint action by the Commission, its members and Camarero to deprive PRHOA and its members of their property rights and of its procedurally and substantive due process of law rights.

54.    Camarero falls within the description of the three (3) approaches and the joint action test. Therefore, Camarero cannot sustain that the Fifth and Fourteenth Amendments do not apply thereto since Camarero is acting in concert with the Commission and its members, as revealed by Mr. Rodríguez himself in his letter of March 28, 2024, where he ignored PRHOA's request for access to Mr. Passero, evading the purpose of PRHOA's letter, and implying in his answer having the endorsement of the Commission as to his opinionated conclusions, devoid of any factual support and contrary to the reality of the Track.

55.    The lack of action by the Commission and its members jointly with that of Camarero resulting in the deprivation of PRHOA and its members' due process of law, as set forth in the Complaint resulting in  the dangerous condition of the Track is what that give rise to

the Complaint. Camarero cannot reject or deny its participation in the factual scenario on which the Complaint is premised.

### iii. Third Claim for Relief: Violation of the Members of PRHOA's Constitutional Due Process Rights Pursuant to 42 U.S.C. § 1983

56.  Camarero argues that the claim for relief is not directed thereto, since Camarero is not a "person" within the meaning of Section 1983.

57.  Contrary to Camarero's argument, in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court, after considering the legislative history of the Civil Rights Act of 1871, the precursor of 42 U.S.C.S. § 1983, held that (1) local governments, municipal corporations, and school boards were "persons" subject to liability under Section 1983, and thus were not wholly immune from 1983 suits; (2) that as "persons" subject to liability under 1983, local governing bodies could be sued directly for monetary, declaratory, or injunctive relief where the action that was alleged to be unconstitutional implemented a policy statement, ordinance, regulation, or decision officially adopted by that body's officers, or where constitutional deprivations were visited pursuant to governmental "custom," even though such custom had not received formal approval through the body's decision making channels; (3) that local government officials sued in their official capacities were "persons" under 1983 in those cases in which a local government would be suable in its own name…. The same principles apply to Camarero due to its concert with the Commission and its members where as here the joint unconstitutional actions are directed to implement the Commission and its members' policy of shielding Camarero from complying with its obligations under the Gaming Commission Law, the Racing Act and Regulation No. 8944.

58.  Additionally, as held in *Office of the Pub. Guardian v. Elliot Hosp.*, 630 F. Supp. 3d 345 (D. N.H. 2022), to recover under § 1983, a plaintiff must prove that the defendant, acting

under color of state law, deprived the plaintiff of a right or privilege guaranteed under the Constitution or federal law. Private parties acting in their individual capacities are not ordinarily acting under color of state law and are thus not generally liable under § 1983. *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4 (1st Cir. 2005). There are, however, certain circumstances in which a private individual may be liable under § 1983. *Id.* As is relevant here, private parties may be liable as state actors when they are **willful participants in joint activity** with the State or its agents. See *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). A plaintiff can show evidence of joint activity by "plan, prearrangement, conspiracy, custom, or policy . . . ." *Alexis v. McDonald's Rests. of Mass., Inc.*, 67 F.3d 341, 351 (1st Cir. 1995). *Office of the Pub. Guardian v. Elliot Hosp.*, supra at 352 (Emphasis added)

59.   The question of whether a private individual jointly participated in state action is highly fact-based. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982). In considering whether a private party was a state actor based on an agreement or plan with a state agent, courts have generally looked to whether the private party engaged in a conspiracy with the state agent. *Office of the Pub. Guardian v. Elliot Hosp.,* supra at 352

60. To establish civil conspiracy against a private party, a plaintiff must show: (1) that the defendant, together with at least one other party who was a state agent, willfully agreed to inflict a wrong or injury upon the plaintiff; (2) that one of the conspirators made an overt act in furtherance of the conspiracy; and (3) that the overt act caused the plaintiff to suffer a constitutional deprivation. *Earle*, 850 F.2d at 844; Adickes, 389 U.S. at 152. *Office of the Pub. Guardian v. Elliot Hosp.*, supra at 353

61.   Just as described in *Office of the Pub. Guardian v. Elliot Hosp.*, by its actions Camarero has willfully and jointly planned and conspired with the Commission and its members

to continue depriving PRHOA and its members of their constitutional rights by not complying with their obligations under the Gaming Commission Law, the Racing Act and Regulation No. 8944.

62.  Camarero complies with the three (3) factors of *Office of the Pub. Guardian v. Elliot Hosp* since Camarero: (1) together with the Commission and its members has willfully agreed to inflict a wrong upon PRHOA by continuously ignoring PRHOA's well founded requests; (2) the Commission and its members have been conspirators and continue to conspire against PRHOA; and (3) the Commission, its members and Camarero's acts have caused PRHOA and its members to suffer a constitutional deprivation.

63.  Moreover, recently the District Court in *Hines v. Ellis Nursing Home, Inc.*, 2023 U.S. Dist. LEXIS 203462 (Dist. Mass. 2023), determined that to state a viable Section 1983 claim, the moving party must demonstrate (1) that the conduct complained of transpired under the color of state law and (2) as a result, claimant suffered a deprivation of rights protected by the Constitution or the laws of the United States. *Klunder v. Brown Univ.*, 778 F.3d 24, 30 (1st Cir. 2015). "Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992); *Estades-Negroni v.* supra at 4.

64.  To assess whether a private party conducted itself as a state actor, the Court examines three, distinct inquiries. *Estades-Negroni*, 412 F.3d at 5; *Malachowski v. Keene*, 787 F.2d 704, 710 (1st Cir. 1986). First, under the state compulsion test, the Court addresses whether the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State." *Estades-Negroni*, 412 F.3d at 5. Second, under the nexus test, a private party can be considered a state actor when the circumstances demonstrate that the state has "so far insinuated itself into a

position of interdependence with the [private party] that it was a joint participant" in the alleged wrongdoing. *Rinsky v. Trs. of Bos. Univ.,* No. 10-CV-10779-NG, 2010 U.S. Dist. LEXIS 136876, 2010 WL 5437289, at *4 (D. Mass. Dec. 27, 2010) (alteration in original) (quoting *Estades-Negroni*, 412 F.3d at 5). Third, the Court applies the public function test, in which "a private party is viewed as a state actor if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been 'traditionally the exclusive prerogative of the State.'" *Estades-Negroni*, 412 F.3d at 5 (quoting Blum, 457 U.S. at 1005). *Hines v. Ellis Nursing Home, Inc.*, supra at pages 16-17.

65.  Here, Camarero meets the criteria set forth in the three (3) factors stated in the preceding paragraph.

66.  First, as to the state compulsion test, the Commission and its members (the State) has exercised coercive power and has provided significant encouragement to Camarero so that Camarero's challenged conduct must in law be deemed to be that of the State, to the extent of denying PRHOA and its members' request for Mr. Passero to examine the Track and the equipment used for its maintenance and render a report thereon at PRHOA's sole cost, conduct attributable to the Commission, an agency of the Commonwealth, and its members acting in concert with Camarero.

67.  Second, the nexus test, Camarero by its actions in concert with the Commission and its members, encouraged by their inaction and taking advantage thereof, can be considered a state actor, since Camarero has been a joint participant alongside the Commission and its members in the wrongdoings giving rise to the Complaint.

68.  Third, the public function test, Camarero has conducted itself as a state actor, since in engaging in the aforesaid acts has acted as a *qua* regulator, underscored by its denial of Mr. Passero examining the Track and the equipment used for its maintenance, thus

performing a public function that is the prerogative of the Commission and its members, *sub silentio* sanctioned thereby, notwithstanding PRHOA and its members' requests thereto as to Mr. Passero's examination of the Track.

### iv. Fourth Claim for Relief: Damages

69.  The fourth claim for relief is predicated on the damages suffered by the members of PRHOA due to the Commission, its members and Camarero's actions and inaction on PRHOA and its members' complaints and requests as indicated above.

70.  Camarero alleges that this claim for relief is for damages under state law and since PRHOA's federal claims against "must fail", this Court has no jurisdiction over Camarero.

71.  As set forth herein, this Court has supplemental jurisdiction over Camarero since Camarero falls within the criteria of the federal courts for supplemental jurisdiction pursuant to the Fourteenth Amendment to vest on this Court. PRHOA has a viable Section 1983 claim against Camarero as to this claim for relief since it has demonstrated that Camarero's conduct transpired under the color of state law and as a result, PRHOA suffered a deprivation of rights protected by the Constitution.

72.  In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of Constitution. 28 USCS § 1367

73.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties. It also includes state law claims against one defendant, even when the federal claims giving rise to original jurisdiction remain against only other defendants. To satisfy this standard, claims must derive from a common nucleus of operative

fact with the claim satisfying original jurisdiction, as is the situation here. *Macua v. Empire Beauty Sch.*, 2023 U.S. Dist. LEXIS 169251 (D. N.H. 2023) at pages 8-9.

74.   District courts may decline to exercise supplemental jurisdiction over a claim if: (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c)

75.   As discussed by this Court in *Batista-Acevedo v. Presbyterian Cmty. Hosp., Inc.,* 2023 U.S. Dist. P.R. LEXIS 190370, under 28 U.S.C. § 1367(a), Courts may exercise "pendent party jurisdiction" to exercise supplemental jurisdiction between federal claims brought against one defendant, and state claims brought against another defendant, when they arise out of the same facts. *Millan v. Hosp. San Pablo*, 389 F. Supp. 2d 224, 236 n.6 (D.P.R. 2005) (quoting Erwin Chemerinski, Federal Jurisdiction 338-41 (Aspen Publishers, 4th ed. 2003)). *Batista-Acevedo v. Presbyterian Cmty. Hosp., Inc.*, supra at page 15

76.   Even where a court dismisses all federal claims, it looks first to "the interests of fairness, judicial economy, convenience, and comity" to decide whether to exercise supplemental jurisdiction. *Lambert v. Fiorentini*, 949 F.3d 22, 29 (1st Cir. 2020). Courts further judicial economy when they exercise supplemental jurisdiction over claims that arise from the same core facts as claims of original jurisdiction, resolving multiple related matters at once. *Redondo Constr. Corp. v. Izquierdo*, 662 F.3d 42, 49 (1st Cir. 2011). *Batista-Acevedo v. Presbyterian Cmty. Hosp., Inc.*, supra at pages 15-16.

77.   Here, (1) the claim raised by PRHOA is not a novel or complex issue of State law; (2) the civil claims do not substantially predominate over the claims over which this

Court has original jurisdiction; (3) this Court has not dismissed any claims over which it has original jurisdiction; and (4) there are no compelling reasons for declining jurisdiction.

78.  Additionally, all the claims arise from the same core facts and it would be in the interests of fairness, judicial economy and convenience for this Court to exercise supplemental jurisdiction.

### Exhaustion of State Remedies

79.  The "general rule" is that plaintiffs may bring constitutional claims under §1983 "without first any sort of state lawsuit, even when state court actions addressing the underlying behavior are available." D. Dana & T. Merrill, Property: Takings 262 (2002); see *McNeese v. Board of Ed. for Community Unit School Dist*. 187, 373 U. S. 668, 672, 83 S. Ct. 1433, 10 L. Ed. 2d 622 (1963). "The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.". This is as true for takings claims as for any other claim grounded in the Bill of Rights. *Knick v. Twp. of Scott*, 588 U.S. 180, 194, 139 S. Ct. 2162, 2172-73 (2019)

**WHEREFORE,** it is respectfully requested that the Motion to Dismiss be denied.

**CERTIFICATE OF SERVICE**: I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants and to the Gaming Commission of the Government of Puerto Rico at infocjpr@comjuegos.pr.gov; Manuel Cidre Miranda at Manuel.Cidre@ddec.pr.gov; Antonio Ramos Guardiola at infocjpr@comjuegos.pr.gov; Carlos Rodríguez Mateo at infocjpr@comjuegos.pr.gov; Ray J. Quiñonez at infocjpr@comjuegos.pr.gov; Carlos Mercado Santiago at infocjpr@comjuegos.pr.gov; Cristobal Méndez Bonilla at infocjpr@comjuegos.pr.gov; Juan Carlos Santaella Marchán at santaellaj@comjuegos.pr.gov and

to Camarero Race Track Corp. through its president, Ervin Rodríguez Vélez at erod@camareroracepr.com.

San Juan, Puerto Rico this 24th day of June 2024

_s_/**Charles A. Cuprill-Hernández**
USDC-PR 114312
Charles A. Cuprill, P.S.C. Law Offices
**Counsel for Puerto Rico Horse Owners Association, Inc.**
356 Fortaleza Street - Second Floor
San Juan, PR  00901
Tel.: 787-977-0515
Fax: 787-977-0518
E-mail: ccuprill@cuprill.com